David T. Gibbons, J.
Under the indictment herein, the defendant is charged with the crime of criminally selling a dangerous drug in the third degree, (two counts), and criminally possessing a dangerous drug in the fourth degree, (two counts).
In the course of an identification hearing herein, the defendant, by notice of motion, is seeking by subpoena duces tecum, pursuant to CPL article 610 and CPLR 2307, to obtain the “ complete personnel file, including all records of disciplinary actions ” of Patrolman Norland Carroll and Patrolman Joseph Sampson, both assigned to the Nassau County Police Department Narcotic Squad, and by a second subpoena duces tecum to obtain certain police reports pertaining to the activities of the said law enforcement officers in the course of their police work.
The defendant’s request is based on a recent opinion of the Supreme Court, New York County, Central Narcotics Part, in People v. Sumpter (75 Misc 2d 55). In that case (p. 56), the defendant contended that his need for subpoenaed police personnel files was “ so that it could be ascertained whether there might be a basis for cross-examination of the officers as to prior ‘ bad acts’, in order to impeach their credibility.” (Emphasis supplied.)
The defendant here seeks to have the court issue a subpoena duces tecum for the purpose of ascertaining whether the police personnel records would reveal any ‘‘bad acts ” by the said police officer.-, which could prove helpful in impeaching their credibility upon .their respective cross-examination.
*757 This defendant further advances the contention that without the subpoenaed personnel files he would be unable to make the required showing of good faith.
In the Sumpter case, the court concluded that the Police Department personnel files were subject to a subpoena duces tecum and that the court, in camera, would inspect those files to determine whether any information contained therein should be made available to defense counsel in aid of his cross-examination to impeach credibility or for other purposes.
Insofar as the Sumpter decision holds that any evidence which is material, competent and relevant “ to the matters in issue, including the guilt or innocence of the defendant ”, and that so-called privileged public records will be revealed to achieve such end, this court is in full agreement.
However, this court cannot, for the reasons hereinbelow considered, subscribe to the rule enunciated by the Sumpter decision to the effect that a subpoena duces tecum may be utilized as a basis for compelling production and examination of police department personnel records of a police witness in order to ascertain whether such records disclose a basis for an inquiry of the witness on cross-examination as to alleged, prior ‘ ‘ bad acts ’ ’ which might impeach his credibility.
1. It has been firmly established in our law of discovery as far back as 1927 in People ex rel. Lemon v. Supreme Ct. (245 N. Y. 24, 29), that, “ Documents are not subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves (Falco v. N. Y., N. H. & H. R. R. Co., 161 App. Div. 735, 737; Woods v. De Figaniere, 25 How. Pr. 522, 526, 527; Knight v. Marquess of Waterford, 2 Y. & C. Ex. 22, 36).”
Mere conjecture or a surmise that useful evidence may exist does not provide a legal basis for a disclosure of records. In Dienstag v. Athenson & Passin, Inc. (60 N. Y. S. 2d 794, 795, affd. without opn. 270 App. Div. 927) the court held: “ The truth or falsity of the entries in the alleged records is not one of the issues in the pending action. If they are of any significance at all, it is .only to the extent that they may aid the- plaintiff in the proof of his case. If authentic, the records in no sense affect the defense; if false, they do no more than discredit the plaintiff’s testimony. Whether as evidence or used to refresh the plaintiff’s recollection, the recon h are not inherently bound to the issues in controversy. 1 mn of fh> opinion' that the statute mag not be extended to *758 authorise the discovery and inspection of documents in order to enable one party to an action to check on the credibility of the other. The cases cited by the defendant relate to documents which are basic to the determination of the litigation. They present no circumstances analogous to those indicated on this motion. The motion for discovery and inspection is denied.” (Emphasis added.)
The defendant has not demonstrated the existence of any facts from which it might be concluded that the police personnel records would reveal any ‘ ‘ bad acts ’ ’ perpetrated by the two police witnesses. The subpoena duces tecum presented herein to obtain the departmental personnel records of the police witnesses is merely a device to carry on a ‘ ‘ fishing expedition ” to seek out possible evidence which may be useful to the defendant. Such was never, and is not now, the function of the process of subpoena duces tecum. (See, also, Peters v. Marquez, 21 Misc 2d 721, and cases therein cited.) (Hoffman v. Consolidated Avionics Corp., 20 Misc 2d 84, 85.)
2. Apart from the general objection above considered, there are, in addition, reasons of a more specific substantive nature why this application should be denied.
Essentially, the determination of the question presented here involves a consideration of the operation and scope of the rule touching upon the impeachment of a witness or a defendant by cross-examination to elicit facts showing his prior immoral or criminal behavior in order to discredit his testimony.
It is a well-established principle of law in this State that a witness, including a criminal defendant, who takes the witness stand, may be cross-examined as to any misdeeds committed by him as bearing on his credibility and as showing, if he admits the commission of any criminal or immoral act, that he is unworthy of belief. (People v. Webster, 139 N. Y. 73, 84; Derrick v. Wallace, 217 N. Y. 520, 524; People v. Johnston, 228 N. Y. 332, 340; People v. Malkin, 250 N. Y. 185, 193; People v. Sorge, 301 N. Y. 198, 200.)
Inasmuch as" evidence relating to the misdeeds of a witness for the purpose of impeaching his credibility concerns itself with matters collateral to the main issue of the case, a limitation is imposed upon such evidence to the extent that it may only be obtained by interrogation of the witness, whose answers are binding on .the examiner and which may not be contradicted by other extrinsic evidence.
In People v. Sorge (301 N. Y. 198, 200) Judge Fttld of the Court of Appeals, expressed the rule in the following language: *759 u There can, of course, be no doubt as to the propriety of cross-examining a defendant concerning the commission of other specific criminal or immoral acts. A defendant, like any other witness, may be ‘ interrogated upon cross-examination in regard to any vicious or criminal act of his life ’ that has a bearing on his credibility as a witness. (People v. Webster, 139 N. Y. 73, 84; see, also, People v. Jones, 297 N. Y. 459; People v. Brown, 284 N. Y. 753; People v. Johnston, 228 N. Y. 332, 340; People v. Casey, 72 N. Y. 393, 398-399; see, also, 8 Wigmore on Evidence [3d ed.], § 2277, p. 453 * * * And if the questions have basis in fact and are asked by the district attorney in good faith, they are not rendered improper merely because of their number * * * Nor is it improper for a district attorney to continue his cross-examination about a specific crime after a defendant has denied committing it. As long as he acts in good faith, in the hope of inducing the witness to abandon his negative answers, the prosecutor may question further. See People v. Jones, supra, 297 N. Y. 459; People v. Weiss, 129 App. Div. 671, 676; 3 Wigmore on Evidence, op. cit., § 1023, pp. 700-701.) In other words, a negative response will not fob off further interrogation of the witness himself, for, if it did, the witness would have it within his power to render futile most cross-examination. The rule is clear that while a witness’ testimony regarding collateral matters may not be refuted by the calling of other witnesses or by the production of extrinsic evidence (see, e.g., People v. Perry, 277 N. Y. 460; People v. Malkin, 250 N. Y. 185; People v. Freeman, 203 N. Y. 267), there is no prohibition against examining the witness himself further on the chance that he may change his testimony or his answer.”
In a Per Curiam decision, the Court of Appeals, in People v. McCormick (303 N. Y. 403, 404), succinctly stated the rule as follows: “ While the rule is clear that cross-examination upon collateral matters may not be fobbed off by a negative response (see People v. Sorge, 301 N. Y. 198), that rule does not sanction either ‘ the calling of other witnesses or * * * the production of extrinsic evidence’ to refute the witness’ answer on such collateral items (p. 201). In the case before us, confronting defendant with a written statement, purportedly made by him, and reading from it considerable inculpatory material tending to refute his earlier denials, not only rendered such denials futile but amounted to the production of extrinsic evidence within the meaning of the rule here involved. *760 In short, the cross-examination complained of exceeded all permissible limits.” (Emphasis added.)
(See, also, People v. Cascone, 185 N. Y. 317; People v. Hinksman, 192 N. Y. 421; People v. Richardson, 222 N. Y. 103, 107; People v. Malkin, 250 N. Y. 185, 193, supra; People v. Zackowitz, 254 N. Y. 192, 197; People v. Perry, 277 N. Y. 460, 467; People v. Nuzzo, 294 N. Y. 227; People v. Rosenthal, 289 N. Y. 482, 487; People v. Duncan, 13 N Y 2d 37.)
Application of the above rule of law to the question presented leads .to the conclusion that since the requested police department personnel .records of the two police witnesses would not be competent evidence herein (People v. Sorge, 301 N. Y. 198, supra), the disclosure of such documents will not, therefore, be ordered. (People ex rel. Lemon v. Supreme Ct., 245 N. Y. 24, supra.)
3. With respect to the argument that the matter sought to be disclosed by the subpoena duces tecum addressed to the police department’s personnel records involves exculpatory material required to be revealed under the rule of Brady v. Maryland (373 U. S. 83).
The stated purpose for obtaining the personnel records of the police witnesses is to determine whether they contain any evidence of criminal or immoral misdeeds which could be used to attack their credibility as witnesses.
This court is of the opinion that evidence of “ prior bad acts ” is not exculpatory evidence within the meaning of Brady v. Maryland (supra, p. 87) which held as follows: “ We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where tike evidence is material either to guilt or to punish-’, ment, irrespective of tke good faitk or bad faith of the prosecution.” (Emphasis supplied.) The prosecution may not withhold “ evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty ”,
Evidence concerning the credibility of a witness does not meet the test spelled out in Brady. We are dealing here with impeaching evidence of a truly collateral character, and not evidence which would bear materially on the question of the defendant’s guilt or punishment.
In People v. Bartholomew (73 Misc 2d 541, 547) the court held: “ Clearly, cumulative evidence concerning the credibility of a witness for the prosecution does not meet the tests spelled out in Brady.”
*761 4. In the Sumpter case (75 Misc 2d 55, 60, supra) the learned court recognized the extreme danger in permitting the disclosure of personnel records of witnesses and litigants in the following language with which this court agrees: “In our day, when record keeping respecting our lives and behavior, whatever our calling, is widespread and kept in a multitude of places for a variety of purposes, it is appropriate to question whether compulsory court process should be used to obtain such records in order to ascertain whether any witness, be he police officer or ordinary citizen, may be guilty of 1 bad acts ’ which might be used to impeach his credibility. Does the ordinary citizen who becomes a witness make himself vulnerable to a cross-examiner so that compulsory process can be used to obtain such data respecting his life, because by happenstance he witnesses an accident or a crime or because as part of1 his duty or for his own purposes he participated in a commercial or other transaction ? It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility. The fear of such disclosures may well preclude people from making themselves available as witnesses and dry up valuable sources of evidence. If it is held that the Police Department is required to produce such records as to police officers, why not all governmental agencies and any employer, credit card company, bank, business or corporation with respect to any witness ? The private life of every witness called for whatever purpose would in effect become an open book.”
However, this court cannot subscribe to the treatment of the employment records of police witnesses in a different manner where their disclosure is sought by embarking upon a roving course for the purpose of generally prying into their police files to seek out possible material which may reveal some prior “bad acts ” for use to attack their credibility as witnesses, a use of collateral matter which, as above demonstrated, is forbidden by law. (People v. Sorge, 301 N. Y. 198, supra.)
Nor can this court concur with the reasoning advanced in the Sumpter decision that the rule of reciprocal disclosure mandated by the Supreme Court of the United States with respect to a notice of alibi defense, in Wardius v. Oregon (412 U. S. 470), applies to the situation presented here.
*762 There is nothing in the holding in Wardius which suggests, “that the defendant is entitled to an equal opportunity to obtain such data ’ ’.
Wardius involved a direction for the reciprocal disclosure of prospective witnesses to be used on behalf of the defendant to give evidence relating to his defense of alibi, and a concomitant disclosure by the prosecution of those witnesses which it proposes to use to give evidence to rebut the defendant’s alibi witnesses. There is nothing in Wardius which may provide a valid basis for the claim that the rule of reciprocal disclosure involving an alibi defense may be extended to a point where the prosecution must supply collateral material by disclosing police records which may possibly reveal criminal or immoral acts to impeach the credibility of a police witness under the principle expressed in People v. Sorge (supra), because, as stated in Sumpter (75 Misc 2d 55, 60, supra): “ The Police Department, in the course of its investigation, has undoubtedly obtained evidence respecting his entire background and activities, including his [defendant’s] criminal record, which will be utilized against him if he takes the stand. The same is undoubtedly true with respect to any witness known to the police. It is palpable that such evidence is not ordinarily obtained primarily to impeach credibility, but as part of the Police Department’s routine in performing its duty to investigate crime and those suspected of criminal activity. Nonetheless it may be and is used to attack credibility. This suggests that the defendant is entitled to an equal opportunity to obtain such data ”.
Apart from the established principle of law that collateral evidence may not be used to provide proof of “bad acts ” to attack the credibility of the witnesses’ testimony, the court knows of no rule of law which would permit the court to assist the prosecution, or any litigant, to engage in a speculative searching foray into an employer’s records to find possible matter relating to misdeeds in the name of impeaching the credibility of a witness under cross-examination.
If this could be done the court can envision an extension of the Sumpter decision to enable the -discovery of a witness’ social club records, service records, church records, school records, employment records, and ad infinitum, all to the end of hunting for the elusive “ bad acts ”.
This court believes it would be a gross impropriety, and an improper attempt to extend the principle of the rule of People v. Sorge (supra), and related cases, beyond its intended *763 scope "by permitting the use of collateral evidence to show ‘ ‘ "bad acts ’ ’ to impeach the credibility of a witness.
The court does not hold that under no circumstances will personnel records be disclosed.
The court, however, will not compel a disclosure on a speculative basis to afford to any party collateral matter which, under the circumstances of this case, is not admissible in evidence in any event, to show prior misdeeds by a witness to impeach his credibility.
To compel disclosure, where there is neither specific reference made by defendant to any material in the personnel file relating to “ bad acts”, nor any-reference whatsoever to material relating to guilt or innocence would be an innovation in the law unsupported by any legal authority.
For all of the above stated reasons, the application for a subpoena duces tecum for the police department personnel files of Patrolmen Carroll and Sampson is denied.
In the second application for a subpoena duces tecum, the information requested therein being obviously available to the defense pursuant to mandate of People v. Rosario (9 N Y 2d 286), the witness is directed to produce such records and notes as were used in his direct testimony.