Jora S. Lockmah, J.
The defendant, by her attorney, applies for three judicial subpoenas duces tecum to be directed to governmental or municipal entities. (CPL 610.20, subd. 3; CPLR 2307.) These subpoenas would require the production in court of various police records relating to the crimes charged in the indictment, personnel records of the complainant police officers, records of the District Attorney’s office as to other complaints of assault made by these police officers, and records of the Freeport Human Rights Commission relating to complaints made against these police officers. The Nassau County District Attorney and the Freeport Police Department have appeared in opposition. The ■ Freeport Human Rights Commission has not so appeared.
At the outset we are called upon to determine what issues may properly be considered upon an application pursuant to CPLR 2307. The defendant contends that CPLR 2307 merely *1091 charges the court with the duty of performing an essentially ministerial act. She argues that the sole consideration before the court is whether original documents or copies -should be produced. This proposition is not without support. (Friedeberg v. Haffen, 162 App. Div. 79; Masten v. State of New York, 14 Misc 2d 119; McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 2307, Cannon, Practice Commentary.) However, CPLR 2307 (subd. [b]) provides that, as a general rule, the production of photostatic copies constitutes compliance with a subpoena issued under CPLR 2307 (subd. [a]). As the Practice Commentary recognizes, to construe CPLR 2307 (subd. [a]) as requiring only that the court decide whether originals or copies are to be produced renders that statute meaningless in light of CPLR 2307 (subd. [b]). We cannot so construe an act of the Legislature. (Neddo v. State of New York, 194 Misc. 379, affd. 275 App. Div. 492, affd. 300 N. Y. 533.) Case law indicates that upon an application for a judicial subpoena duces tecum the court may consider various issues including the materiality and relevancy of the items sought to be subpoenaed (Matter of Trombetta v. Van Amringe, 156 Misc. 307), the specificity of the demand (Blaikie v. Borden Co., 47 Misc 2d 180), and the public policy involved, if any (Yude v. Cruise, 261 App. Div. 938, affd. 287 N. Y. 603; McGowan v. Metropolitan Life Ins. Co., 234 App. Div. 366; Matter of Green, 92 Misc. 503). Indeed Weinstein, Korn and Miller in their treatise, New York Civil Practice (vol. 2A, par. 2307.03) indicate that when a CPLR 2307 application is opposed, the court may treat the proceeding as a motion to quash. This construction has the virtue of a proper deference for an act of the Legislature and additionally provides for a more efficient procedure in that the application and any motion to quash which might otherwise be made are disposed of in a single proceeding.
The use which the defendant intends to make of the items which -she would have us subpoena is the decisive factor in determining whether these applications should be granted. “ A subpoena duces tecum [may not] be used for the purpose of discovery or to ascertain the existence of evidence.” (Matter of Saratoga Harness Racing Assn. v. Monaghan, 9 Misc 2d 868, 872; Cataldo v. County of Monroe, 38 Misc 2d 768, affd. 19 A D 2d 852.) Rather, it is a court process which directs an individual to appear together with books, documents, papers or other items in his possession so that by reference to these items he may give testimony relevant to the matter under inquiry and, through the production of evidence, assist *1092 in the pursuit of truth. (CPL 610.10, subds. 2, 3; CPLR 2301; Franklin v. Judson, 96 App. Div. 607.) “ [A subpoena duces tecum] gives no right whatever to the inspection of the books by * * * counsel. ’ ’ (Franklin v. Judson, supra, p. 607.) Where it is apparent that a party does not intend or cannot hope to offer testimony which refers to the items subpoenaed but merely seeks discovery and inspection, his application should be denied. (Matter of Saratoga Harness Racing Assn. v. Monaghan, supra; Matter of Ebbets, 155 Misc. 870.)
From the Freeport Police Department the defendant would have us subpoena, inter alia, the personnel profile records of Officers King and Honeyman, the complainants herein, and any and all records, complaints, inquiries and investigations, whenever made, pertaining to their performance as police officers. The defendant asserts that these items are necessary to enable a cross-examination of Officers King and Honeyman as to their professional competence as well as on their credibility.
The defendant has failed to inform the court and we fail to see how the professional competence of the complainant police officers is relevant and material to a prosecution for assault. (Penal Law, art. 120.) The defendant does make reference to alleged undue apprehensiveness of assault on the part of Officers King and Honeyman and also hints that they have a tendency to use unnecessary physical force. However, at no point does the defendant express an intention of offering a defense of justification (Penal Law, § 35.15) nor allege any facts tending to show that that defense is available. At best the defendant appears to be foraging for evidence that such a defense would be reasonable. This is not a proper use of a subpoena duces tecum. (Matter of Saratoga Harness Racing Assn. v. Monaghan, supra.)
In support of her contention that these items should be subpoenaed to permit an attack upon the credibility of the complaining witnesses the defendant cites People v. Sumpter (75 Misc 2d 55). There the court denied a motion to quash a subpoena such as the one now before us holding, inter alia, that (p. 56): “ The right of a defendant to confront and cross-examine witnesses is fundamental. This includes the right to attempt to impeach the credibility of a witness by proving his prior conviction of crime and by inquiring into facts showing his general reputation with respect to truth and veracity and any immoral, vicious or criminal act which might affect his character and tend to show the witness is not worthy of belief.” While we do not quarrel with this statement of law, *1093 the result which the court derived from it is unacceptable. The statement makes a basic and traditional distinction which, under the facts of the case before us, compels a denial of the subpoena with reference to the items now under consideration.
A witness may indeed be impeached by proof of a criminal conviction or by inquiry into his reputation for truth and veracity as well as any past vicious, immoral or criminal conduct. The word ‘ ‘ proof ’ ’ is used as shorthand for the rule that a criminal conviction may be shown by extrinsic evidence, while the word ‘1 inquiry ’ ’ expresses the rule that extrinsic evidence of past vicious, immoral or criminal conduct whether standing alone or as support for testimony of a poor reputation for truth and veracity may not be offered. Testimony as to past vicious, immoral or criminal conduct may be elicited only from the witness himself. (People v. Sorge, 301 N. Y. 198.) While witnesses may be called to testify as to reputation for truth and veracity, they may not, on direct, be asked about specific conduct which may have led to that reputation. (Conley v. Meeker, 85 N. Y. 618; Richardson, Evidence [9th ed.], § 507.) This rule of exclusion rests upon sound policy considerations to wit: insulation of the jury from collateral issues which may tend to confuse, and avoidance of surprise attacks upon witnesses who cannot be expected to enter court prepared to defend every act of ther past lives against charges which may never previously have been made. (3 Wigmore, Evidence [3d ed.], § 979.)
In the instant case -the defendant does not merely seek records of criminal conviction, rather she appears to contemplate a broad assault upon the credibility of the complainants through reputation evidence and past vicious, immoral and criminal conduct. Neither method of impeaching credibility permits the offering of testimony referring to the content of the items the defendant would have us subpoena. Thus the only purpose the defendant could have in seeking the production of the items now under discussion would be discovery and inspection. As we have discussed previously, this is not a proper use for a subpoena duces tecum. (People v. Fraiser, 75 Misc 2d 756.)
Even if the subpoena duces tecum were a discovery device, public policy militates against the granting of an unlimited right to inspect the personnel records of prospective witnesses. No rational distinction divides police officers from other citizens. Were we to find that the defendant is entitled to what he seeks, every witness, before taking the stand, would be *1094 required to lay bare his entire life to public scrutiny. As Wigmore said in a different context: “ ‘ witnesses have rights as well as parties; it is too often the case that they are set up as marks to be shot at.’ But it certainly is the duty of the law and of the judges to .see that due regard is paid to these rights, and that the witness-box does not unnecessarily become, in the words of an old Southern judge, ‘ the slaughterhouse of reputations. ’ * * * The ordinary instinct of decency, not to ¡say courtesy, are violated by such examinations, and every new instance makes us more sodden to the spectacle and tends to bring us towards the same level of degradation. It is the difference between the hunt and the slaughterhouse. One may well enough find sport in stalking the lion in the desert or beating the bush for the tiger, because there is a risk for the hunter which dignifies his sport, and there is a rapacity and a destructiveness in the hunted which leaves no room for sympathy; but the process for cutting the throat or knocking the head of a sheep or an ox penned in the shambles is both safe and brutal, and is to be justified only on the ground of its absolute necessity. The hunting down of a fleeing desperado, or the ensnaring of a chief of counterfeiters by the craft of detectives, is a process which does not violate instincts of fairness or principles of justice. But the ruthless flaying of personal character in the witness box is not only cowardly — because there is no escape for the victim — and brutal — because it inflicts the pain of public exposure of misdeeds to idle bystanders —, but it often has not the slightest justification of necessity. Severe limits must be put to such conduct. As Lord Ellenborough said, ‘ I will put it to your own feelings, your own good sense. ’ Some weight must be allowed to the instincts of manly fairness and good sense * * * with the prospect of such an examination as a possibility, the public is certain to dread the witness-box. From time to time those whose knowledge would have been valuable will seek to evade disclosing it; the ascertainment of the truth will be hampered and perhaps prevented.” (3 Wigmore, Evidence [3d ed.], § 983). The court in People v. Sumpter (75 Misc 2d 55, supra) recognized this public interest, but held that, in the context of a narcotics case, it was unnecessary to consider the broader issue. This is not a narcotics case and our consideration of the broader issue leads us to conclude that public policy will not permit a defendant an unlimited inquiry into the personnel files of prospective witnesses by means of a subpoena duces tecum. (Cf. McGowan v. Metropolitan Life *1095 Ins. Co., 234 App. Div. 366, supra; People ex rel. Heller v. Heller, 184 Misc. 75; Matter of Green, 92 Misc. 503, supra.)
Nor is the materality and relevance of the items the defendant would have us subpoena at all clear. ‘ ‘ A loose belief doubtless obtains in .some minds that almost anything may go in on cross-examination (saving the discretion of the Court). Conceptions of this sort should be radically abandoned. Cross-examination is no universal .solvent for reducing everything to admissibility.” (3 Wigmore, Evidence [3d ed.], § 878.) Police officers are likely to suffer many complaints about their professional conduct since those whom they arrest or reprimand are not often pleased and seldom, if ever, can be fair critics. A cross-examination which recites a litany of complaints from such sources could easily mislead rather than enlighten.
Brady v. Maryland (373 U. S. 83) and the New York cases dealing with the prosecutor’s duty to disclose exculpatory material do not support the defendant’s contentions, for they deal with the disclosure of evidence in the possession of the People. (See People v. Ahmed, 20 N Y 2d 958; People v. Savvides, 1 N Y 2d 554.) They impose no duty on the People to gather evidence which may or may not prove to be exculpatory.
From the Nassau County District Attorney the defendant would have us subpoena the District Court Bureau and County Court Bureau files relating to complaints of assault by police officers King and Honeyman. Accusatory instruments are public records accessible to the defendant. (Nassau County Govt. Law, § 2207; L. 1936, ch. 879, as amd.; Judiciary Law, § 593.) Thus .the defendant, through his own efforts, can ascertain whether and which complaints of assault have been made by Officers King and Honeyman. She has no right to have the People do her research. Moreover, the defendant does not show and we fail to see the materiality and relevance of previous complaints of assault made by the complainants herein.
Therefore, these applications are disposed of as follows: (1) the application for a subpoena directed to the Freeport Human Rights Commission, being unopposed, is granted; (2) the application for a subpoena directed to the Freeport Police Department is granted as to the records of October 18, 1973 dealing with the events at 133 Griffing Place, Freeport, New York. In all other respects it is denied for the reasons stated hereinabove; and (3) the application for a .subpoena directed to the Nassau County District Attorney is denied for the reasons stated hereinabove.
*1096 Those items which are subpoenaed shall be produced in court solely for the purpose of offering testimony at trial. The defendant has not requested and we do not grant any right to discovery and inspection before trial. Nor do we now pass upon the admissibility in evidence of the records themselves or any testimony based thereon; that question is reserved for future consideration.