M. Marvin Berger, J.
The defendants move pursuant to CPL 340.30 for an order directing the District Attorney of *14 Bangs County to permit defense inspection of the personnel folder of a New York City police officer, Robert Rogers, the complaining witness, who charged the defendants with assault.
The defendants were arrested on August 2, 1973, according to the affirmation of the defendants’ counsel, and based on information and belief, during an altercation, at a time when the complainant was not on duty. In the course of the incident, the complainant allegedly drew his service revolver, placed it against the head of the defendant Torres and pulled the trigger.
Defendants also seek ‘ ‘ reports, tapes, photographs, tests and records in the possession of the Police Department Statistics and Records Bureau, the Police Department Forensic Unit, and the Police Department Civilian Complaint Review Board relevant to and concerning the incident leading to the arrest of the defendants. ’ ’
When the motion first came on to be heard, the court asked defense counsel to comment on the very recent holding by Mr. Justice Abraham I. Kalina in People v. Norman (N. Y. L. J., Nov. 28, 1973, p. 19, col. 6) which held, inter alia, that the District Attorney could not be compelled to disclose evidence not under his custody, such as a police personnel file. Defense counsel asserted that this argument, if followed to its logical conclusion might shift responsibility for revealing the information to the Police Department, which might then refuse to produce the records under compulsion of a subpoena duces tecum, on the ground that the defendants’ exclusive remedy was discovery. Thereupon, the court suggested that the motion be resubmitted to request, as an alternative to discovery by the prosecution, that demand for inspection be made to the Police Department.
In accordance with the court’s suggestion the motion to inspect was amended to add the Police Commissioner to the District Attorney or persons against whom the motion for discovery was directed. Briefs opposing the relief were submitted by the Police Department as well as the District Attorney.
The bases for seeking the information are the assertions, all on information and belief, that the complainant engaged in an “ unwarranted and unprovoked ” assault on the defendants, which they were justified in repelling by the use of force; that the complainant has on at least one other occasion threatened people in the neighborhood with his revolver, had at least once before been charged with specific misconduct involving moral turpitude, and on prior occasions had “ made public utterances, remarks and gestures displaying an attitude of bias, hostility and ridicule towards Puerto Ricans, the racial group to which defendants belong.”
*15 According to defendants, more precise information concerning all these charges is possessed by the prosecutor and the Police Department and “ that the information currently available to the defendant [sic] is sufficient to comply with formal requirements, but inadequate for proper presentation for trial unless amplified by discovery ”.
Preliminarily, the court disagrees with the conclusion that the defendants have complied with formal requirements for an application of this sort.
Although article 240 of the CPL, “ Discovery,” is not specific on this point, it seems to the court that an application of this nature should contain sworn allegations of fact based on the personal knowledge of the defendant or of other persons; or, if upon information and belief, stating the sources of such information and the grounds of such belief (cf. CPL 340.30 and 710.60).
However, putting aside that matter, the court is faced with a fundamental question that comes to the fore with increasing frequency: the extent to which discovery of information, heretofore regarded as beyond the reach of adversarial scrutiny, may be made available to a party in a criminal proceeding.
The courts were aware of this problem long before Watergate-related legislative and grand jury inquiries focused public attention on tapes and records in the custody of public officials hostile to demands for their inspection.
In People v. Collins (75 Misc 2d 535, 537), Judge David T. Gibbons documents his belief that over the years, New York has established a large body of case and statute law “ evincing a strong desire to make discovery a ‘ two-way street ’.” He asserts that article 240 of the CPL, adopted from rule 16 of the Federal Rules of Criminal Procedure, not only codified preexisting case law dealing with discovery,. but broadened and liberalized the procedure for pretrial disclosure.
In 1970, in its approved draft of Standards Relating to Discovery and Procedure Before Trial, the American Bar Association approved of a set of general principles defining pretrial procedural needs (Part 1.1). The defendants quote these principles in their supplemental memorandum of law.
Section 2.4 of the Standards calls , on a prosecutor to use diligent, good faith efforts to make available to the defense material in the possession or control of other governmental personnel “ which would be discoverable if in the possession or control of the prosecuting attorney.” If his efforts are unsuccessful, the court shall issue subpoenas directed to the same result, pro *16 vided the material and other governmental personnel are subject to the court’s jurisdiction.
The Standards (2.1) specify the material or information which should be disclosed to the defense. It is far-reaching in scope. But the Standards bar disclosure of work product and, with some limitations, an informant’s identity and national security matters. Also, the court, in its discretion, may deny disclosure of relevant material “ if it finds that substantial risk of annoyance or embarrassment resulting from disclosure would outweigh any usefulness of the disclosure to defense counsel.”
Now what is the materiality of the evidence sought to be inspected by the defense?
So far as tests and records dealing with the discharge or attempted discharge of Patrolman Rogers’ weapon is concerned, the material is discoverable under the provision of subdivision 2 of CPL 240.20 and an order to that effect will issue. Additionally any report or memorandum made by Patrolman Rogers concerning the incident of August 2, 1973, will be available to ascertain whether it contradicts or is at variance with his sworn complaint or testimony, under the safeguard provided by subdivision 4 of CPL 240.20 (People v. Rosario, 9 N Y 2d 286).
We come then to the question of materiality of the officer’s personnel folder. According to the brief of the Deputy Commissioner: “ A personnel folder of a police officer consists of a compilation of numerous documents. It is not a document per se. It contains the extensive background investigation of the officer, conducted at the time he was a candidate for the position. That investigation consists of numerous reports, interviews, affidavits, previous employment records, school records, and numerous other documents amassed by the investigating officer which may or may not have reflected on the character of the candidate. The personnel folder also contains a documentation of the officer’s employment record with the police department. This includes his disciplinary record, his achievements, letters commendatory and letters derogatory (whether substantiated or not), his transfers, promotions, assignments, evaluation reports by his various commanding officers, and various other documents relating to his performance as a police officer. The folder also contains medical records, vital statistics, marital records, and other records of an extremely personal nature.”
The defense seeks to discover: “ The property sought to be produced in this trial are copies of records and reports prepared by the Police Department of the City of New York, includ *17 ing the contents of the personnel folder of the police officer complaining witness. Specifically, these are documents proving prior criminal convictions, or showing facts involving the officer’s general reputation with respect to truth and veracity, or documenting any immoral, vicious or criminal act which might affect the character and show the general lack of credibility of the police officer who will testify as the chief prosecution witness against the defendants. It is contended by the defense counsel, on information and belief, that these documents, including those in the personnel folder, may contain information helpful in the cross-examination and impeachment of the officer’s testimony.”
The defendants’ memorandum of law justifies the demand for discovery, by stating that they simply desire to have the court examine “ a somewhat ‘ fishy ’ set of facts ”. They ask the court to weigh the following considerations: (1) the closeness of the matter sought to be discovered to the alleged crime; (2) whether it would be material and of assistance to the defense to have information on the issue; (3) whether the information is exclusively possessed by the prosecution or is otherwise available to the defense; (4) the ease with which the material sought can be identified and produced; (5) the possibility that the matter may exculpate the accused.
The basic test is materiality and relevance. The court must balance the defendants’ desires against the public interest in maintaining the confidentiality of police personnel records.
As stated by Mr. Justice Kalina in People v. Norman (N. Y. L. J., Nov. 28, 1973, p. 19, col. 6, supra): “ It is the court’s considered judgment that the defense counsel have failed to demonstrate any theory of relevancy or materiality of the information which may per chance be contained in the police records except for the mere speculation and surmise that some information may be revealed which may provide the defense counsel to cross-examine the witness for possible impeachment. ’ ’
A number of recent New York cases, all at nisi prius level, have dealt with the question of whether production of police department personnel records may be compelled by subpoena or a motion for discovery.
The ruling by my learned colleague, Mr. Justice Arnold Fein in People v. Sumpter (75 Misc 2d 55), directing the Police Department to produce subpoenaed personnel records of police officers to a Trial Judge, for in camera inspection by the court and a determination as to their usability in impeaching credibility of their officers, has spawned a number of similar applica *18 tions. In every case the courts have refused to follow Justice Fein’s decision.
No useful purpose would he served by repeating the analysis of the Sumpter ruling by Mr. Justice Kalina in People v. Norman (supra), nor his comprehensive discussion of the opinion of Judge David T. Gibbons in People v. Fraiser (75 Misc 2d 756).
Counsel for the defense, with only minimal urging by the court, provided it with a supplemental memorandum, which discussed the holdings in Fraiser and Norman. Thereafter, with commendable industry, counsel unearthed two additional decisions — neither of them supporting his position.
The two later cases both decided by Nassau County Court Judge John S. Lockman are People v. Coleman (75 Misc 2d 1090) and People v. McArthur (N. Y. L. J., Nov. 20, 1973, p. 20, col. 2).
In Coleman, the defendant applied for three subpoenas calling for production of the personnel records of the complainant police officers, records of the Nassau District Attorney as to the complaint of assault made by the officers and complaints lodged with the Freeport Human Rights Commission relating to complaints against the officers.
Counsel for the defense asserts that the decisive factor in the Coleman case was the court’s holding that a subpoena duces tecum was not the proper instrument for use of the records for discovery purposes. But, Judge Lockman also stated (pp. 1093-1094): “ Even if the subpoena duces tecum were a discovery device, public policy militates against the granting of an unlimited right to inspect the personnel records of prospective witnesses. No rational distinction divides police officers from other citizens. Were we to find that the defendant is entitled to what he seeks, every witness, before taking the stand, would be required to lay bare his entire life to public scrutiny.”
And at page 1095, Judge Lockman, again referring not to the narrow issue of the propriety of a subpoena as a means of obtaining discovery, states: “Nor is the materiality and relevance of the items the defendant would have us subpoena at all clear * * * Police officers are likely to suffer many complaints about their professional conduct since those whom they arrest or reprimand are not often pleased and seldom, if ever, can be fair' critics. A cross-examination which recites a litany of complaints from such sources could easily mislead father than enlighten.”
In People v. McArthur (N. Y. L. J., Nov. 20, 1973, p. 20, col. 2, supra) the defendant sought to subpoena the personnel rec *19 ords of three detectives on the ground that they beat and lied to the defendant in an effort to obtain a confession, thereby putting their credibility in issue and making it necessary to produce their personnel files for use in cross-examination.
Counsel for the defense misunderstands the import of McArthur by asserting that the decision incorrectly states the law in holding that documents themselves must be evidence in order to be subject to discovery. The court merely restated the holding in Brady v. Maryland (373 U. S. 83), that suppression of exculpatory material violated due process when the suppressed items were material either to defendant’s guilt or punishment.
Judge Lockman stated: “ We are dealing here with impeaching evidence of a truly collateral character, and not evidence which would bear materially on the question of the defendant’s guilt or punishment.”
In the supplemental memorandum, counsel for the defense, in conceding that in Fraiser and Norman, the courts were faced with a “ mere fishing expedition ”, alleges that he presents “ a good faith showing of fact from which it might well be concluded that the officer’s personnel record would reveal a prior bad act perpetrated by him which, if believed by a trier of fact, would be considered in determining defendant’s guilt or innocence. Clearly, this is that unusual record that warrants discovery
Yet in his original memorandum, counsel states: “In this prosecution the character of the complaining witness will be in issue, since, if the complainant was in fact the aggressor, the defendants may have been justified in resisting his assault. The defense should be provided with prior acts of misconduct by the complainant which indicate a pugnacious disposition, a disrespectful attitude towards members of defendant’s race, and that the complainant was the type of police officer who frequently abused his office and who would commit the type of wanton assaults the defendants allege the officer committed. Any witness may be cross-examined concerning any previous vicious, immoral or illegal act which he may have committed. (People v. Sorge, 301 N. Y. 198, 200.)”
On the same page, the defendants state: “ On the issue of credibility the officer may be questioned concerning any evidence of hostility or bias towards the defendants, or any interest in protecting himself from censure, reprimand or punishment in the Police Department by discrediting the witnesses against him, the defendants. Prince, Richardson on Evidence, p. 522 (9th ed. 1964).
*20 “ "Where, as here, there are good faith allegations of a reasonable suspicion of prior vicious, immoral or illegal activities on the part of the policeman and the possibility that such activities may have been brought to the attention of police authorities on a prior occasion, this court may examine the records and, in the exercise of its discretion, determine their relevancy under the circumstances of trial.” (People v. Sumpter, 75 Misc 2d 55, supra; emphasis supplied.)
The words “ suspicion ” and “ possibility ” strongly suggest that the discovery sought is in fact what it purports not to be — a fishing expedition.
The language of the memorandum of law stands in sharp contrast with paragraphs 5, 6 and 7 of the affirmation, which albeit on identifiable information and belief, charge complainant with brandishing a revolver on a prior occasion, with displaying racial bias and hostility through public utterances and gestures, and that more precise information is currently in the possession of the prosecutor and the Police Department.
The defense fails to show how prior acts of misconduct by the complainant, discoverable by inspection would be determinative of defendant’s guilt or innocence. Even if such acts indicated complainant’s pugnacious disposition, a disrespectful attitude towards Puerto Ricans, or abuse of office leading to wanton assaults, there would have had to be a finding to that effect (State ex rel. DeConcini v. Superior Ct., 20 Ariz. App. 33). Complaints found to be groundless would be clearly inadmissible.
But commission by complainant of a previous vicious, immoral or illegal act can be utilized only on cross-examination of the complainant and then only on the question of credibility (People v. Sorge, 301 N. Y. 198, 200). The issue is collateral and no extrinsic evidence may be used to contradict the complainant’s denial of commission of such acts. The recent holding by my learned colleague, Judge Alfred H. Kleiman, in People v. Nicolini (76 Misc. 2d 47 [Dec. 7, 1973]), cited by defendants as authorizing access to prior statements of prosecution witnesses before giving of their direct testimony, related solely to grand jury testimony of such witnesses. Such evidence is clearly covered by the holding in People v. Rosario (9 N Y 2d 286, supra).
In conclusion, the court feels that the motion must be denied except, as previously stated, insofar as it deals with laboratory tests or reports concerned with the discharge or attempted discharge of Patrolman Rogers’ gun, or any reports made by him *21 concerning the incident of August 2, 1973. As to those matters and those matters alone, the motion is granted.
The court commends counsel for the diligence with which they researched the question and supplied the court with the authorities supporting their respective positions.