Leon B. Polsky, J.
The defendant is a lawyer charged with bribery, tampering with a witness and perjury growing out of his representation of Robert J. Bottigliari on a matter in Richmond County Criminal Court. He has subpoenaed various documents and records relating to the Bottigliari case and people involved in the incidents underlying the present charges.
This court presently maintains exclusive custody and control of approximately 4½ linear feet of paper consisting of thousands of documents delivered by various governmental, municipal, and private entities pursuant to judicial subpoenas duces tecum issued by the defendant and signed by the late Justice Murtagh. All of these subpoenas were applied for and directed to the agencies a short time before the scheduled trial of the defendant in February, 1975. The trial did not take place for many reasons, including Richmond County’s need to reconstitute the petit jury venire to conform to the requirements set forth in Taylor v Louisiana (419 US 522). The defendant now requests that these items be made available to him before trial. That request is denied. All the judicial subpoenas duces tecum are withdrawn and, except as otherwise provided herein, all items shall be returned to the *783 agencies from which they were produced. The defendant is given leave to apply for judicial trial subpoenas shortly before trial provided, in view of the matters discussed below, they are accompanied by an affidavit setting forth the materiality, relevancy, and admissibility of the subpoenaed testimony and documents.[1]
A judicial subpoena duces tecum is a court process for compelling the attendance at trial of witnesses and items in the control of those witnesses. It is not to be used for discovery and inspection purposes nor to ascertain the existence of evidence. The court issues its process when reasonably satisfied that the use the defendant intends to make of the witnesses and items at trial is material and relevant to the case (People v Coleman, 75 Misc 2d 1090).
The defendant has requested witnesses and records for which there are obvious privileges clearly recognized by both statute and public policy (McGowan v Metropolitan Life Ins. Co., 234 App Div 366, app dsmd 259 NY 454). It is disturbing to this court to find among the items sought and delivered are the foster care records of the minor children of a potential witness, medical and psychiatric evaluations of potential witnesses and their families, general hospital records of potential witnesses, confidential Family Court records of potential witnesses and their families, and confidential records of the Department of Social Services relating to potential witnesses and their families. It should be noted that the charges in this indictment have nothing whatsoever to do with physical injuries suffered by the potential witnesses and their families as a result of the defendant’s actions. The only possible use to be made of these items is to fish for impeaching material.
The law allows for impeachment of a witness in various ways. But this court cannot reasonably foresee any method of impeachment that would allow the introduction of the testimony of these witnesses accompanied by the relevant privileged documents. Even if the information contained in the items delivered were available to the defendant, at best it could lead to the asking of a question, the answer to which could not be contradicted by introducing extrinsic evidence.
In addition, the defendant has requested the personnel records of potential civilian and law enforcement witnesses. *784 Here, too¿ whether the employer is the Police Department, another governmental or municipal agency, or a private entrepreneur, the aim is discovery of something that may prove embarrassing to the witness if inquired into on cross-examination. If a witness’ past vicious, immoral or criminal acts result in a conviction, the CPL provides a means whereby under some circumstances extrinsic evidence of that conviction can be introduced (CPL 60.40). Absent such circumstance, one may not prove the impeaching acts by extrinsic evidence (People v Sorge, 301 NY 198).[2] Accordingly, the court withdraws the judicial approval for the subpoenas duces tecum relating to personnel records (People v Torres, 77 Misc 2d 13). However, in this regard, I will sign an ex parte subpoena duces tecum for the fingerprint record of any person named by the defendant and I will also direct the People to obtain such records for all of its witnesses, to be deliverable to the defense at the direction of the Trial Judge.
The New York City Police Department has delivered files relating to its investigation of the incident involving Robert J. Bottigliari’s misconduct at a bar. in Richmond County and also has delivered files relating to its investigation of the bribery and tampering charges that are the subject of this indictment. Before ordering the return of this material to the Police Department, I will, if the defendant so requests, direct the Special Prosecutor’s office to examine the papers for any Brady or Rosario material to which the defendant may now or later be entitled. It would be futile for this court to undertake such an examination, knowing little about the background and details of the prosecution or the defense.
This court is not insensitive to the fact that this, as all criminal prosecutions, can result in the imprisonment of the defendant. Rules of evidence and procedure developed over the years within the context of an adversary system of justice sometimes fail to achieve the aim of a just result fairly arrived at. When such a distortion of the judicial proceeding is threatened, common-law courts are neither powerless nor reluctant to exercise their constitutional responsibilities (see, e.g., Davis v Alaska, 415 US 308; People v Maynard, 80 Misc 2d 279).
In conclusion, the use of shotgun style judicial subpoenas to *785 discover privileged intelligence information about the entire life of a potential witness and his family, whether from public agencies or private repositories, will find little favor with this court. Witnesses have rights in both criminal and civil proceedings. If every witness faced the prospect of having his entire privileged personal life examined by counsel and then paraded before the public, we would find ourselves looking long, hard, and perhaps fruitlessly, for those who would shed light on the truth of controversies before the court.

. I will not specify the named subjects of the various subpoenas in order to preserve the ex parte nature of applications for judicial subpoenas and in order not to divulge any trial strategy that may be involved.

. There is not the slightest suggestion by the defense that the material sought relates to matters which would fall outside the extrinsic evidence prohibition (see People v Freeland, 36 NY2d 518).