OPINION OF THE COURT
Benjamin Altman, J.
The defendant has been charged with the crime of jostling. The defendant has submitted as part of his omnibus motion a request for the police personnel records of the officer involved in the arrest of the defendant. The People oppose such a request. The other requests of the defense in its omnibus motion have been answered. The court will direct itself to the issue of the police personnel records.
The defendant was arrested on October 17, 1977 and *196 charged with attempted grand larceny and jostling. The charge of attempted grand larceny was subsequently dismissed.
The defense contends that the arresting officer had testified in a preliminary hearing as to the arrest of another defendant as to charges of jostling and attempted grand larceny in April of 1977. The defense alleges that the testimony of the alleged facts were identical in virtually every detail to his testimony in the preliminary hearing here.
This "identicial testimony” in both instances raises questions as to the officer’s credibility. The defense thus requested an in camera viewing of the police officer’s personnel record.
The court granted the defense’s request to view the personnel records of the officer in question.
The defendant contends that the police personnel records are important and discoverable in that the records address the potential impeachment of the People’s witnesses.
Before considering the points made, the court would like to commend counsel for the diligence with which they researched the issues and supplied the court with the respective authorities supporting their positions.
The defense has based its request for personnel records in part on the fact that the requested material is either Brady or Rosario material or both.
The defendant insists that the records be released as Brady material.
As stated in People v Coleman (75 Misc 2d 1090, 1095): "Brady v. Maryland * * * and the New York cases dealing with the prosecutor’s duty to disclose exculpatory material do not support the defendant’s contentions, for they deal with the disclosure of evidence in the possession of the People [citations omitted]. They impose no duty on the People to gather evidence which may or may not prove to be exculpatory.”
Also, the Brady doctrine states that suppression of exculpatory material violated due process when the suppressed items were material either to the defendant’s guilt or punishment. Here, under the defense’s request, the items sought must be categorized as impeaching evidence of a very collateral nature. The items sought cannot be classified as evidence which would bear directly on the question of the defendant’s guilt.
Nor does the decision of People v Rosario (9 NY2d 286) provide a conduit for the defense to obtain the personnel files. *197 Under this case, the defendant is permitted to examine a witness’ prior statements whether or not it varies from his testimony on the stand, for use in cross-examination for impeachment purposes.
The Court of Appeals, in making the decision, stated the following (p 290): "It does not mean that the defense will be able to go on a tour of investigation seeking generally useful information. Our decision presupposes that the statement relates to the subject matter of the witness’ testimony, that it is to be used for impeachment purposes only after direct examination and that the necessities of effective law enforcement do not require that the statement be kept secret or confidential.”
Thus, the Rosario doctrine is not applicable.
Case law has shown a great reluctance to give police personnel records to defendants.
In People v Sumpter (75 Misc 2d 55) the court discussed the possibility of turning over personnel records to the defense through the vehicle of discovery. The court did order the police department to produce the records to the Trial Judge so that he might, in camera, examine and determine whether information in the records should be made available to counsel for the defendant in aid of cross-examination to impeach credibility or for other purposes.
The court in Sumpter noted (p 60) a serious drawback to items such as personnel records. "It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility.”
Further logic can be found in case law: "Police officers are likely to suffer many complaints about their professional conduct since those whom they arrest or reprimand are not often pleased and seldom, if ever, can be fair critics. A cross-examination which recites a litany of complaints from such sources could easily mislead rather than enlighten.” (People v Coleman, supra, p 1095.)
In People v Torres (77 Misc 2d 13) the defendants were charged with assault.
The defendants allegedly became involved in an altercation with the complainant, an off-duty policeman. The defendants allege during the incident the complainant drew his service *198 revolver, placed it against the head of one defendant and pulled the trigger. The defendants sought the personnel folder of the complainant police officer.
The defendants justified their request on the grounds that: the complainant had engaged in an unwarranted assault on the defendants, which they were justified in repelling by the use of force; the complainant had on at least one occasion threatened people in the neighborhood; and had on prior occasions made "utterances, remarks and gestures displaying an attitude of bias, hostility and ridicule towards Puerto Ricans” (p 14). The defendants were Puerto Rican.
In denying the defendants’ request for the records, the court stated (p 20): "The defense fails to show how prior acts of misconduct by the complainant, discoverable by inspection would be determinative of defendant’s guilt or innocence. Even if such acts indicated complainant’s pugnacious disposition, a disrespectful attitude towards Puerto Ricans, or abuse of office leading to wanton assaults, there would have had to be a finding to that effect”.
In People v Vasquez (49 AD2d 590) the case involved narcotics prosecution in which the credibility of the officers was the key issue.
The prosecution on direct examination of the officers introduced into evidence citations and medals received by the officers.
The defendant issued one or more subpoenas duces tecum seeking many police personnel and other records. The subpoenas were quashed by the trial court as being overly broad.
The Appellate Division stated (p 591): "We also acknowledge that police files and records contain much that is privileged and confidential and which should not be disclosed except upon a clear showing of materiality [citations omitted]. Nevertheless, under the peculiar circumstances of this case, enough was shown to permit defendant to examine the relevant portions of the personnel records of the officers who were testifying against him.”
The Appellate Division stated the trial, court should have conducted an in camera proceeding to determine the relevancy and materiality of the records.
Thus, with credibility the key issue, peculiar circumstances existing (a dead informer with his sole contact being an officer convicted of shaking down narcotics dealers), along with the *199 People introducing department commendations, the Appellate Division felt the defendant had demonstrated some theory of relevancy or materiality for the information sought for the trial court to order an in camera inspection.
In defense of his position defendant alludes to the case of Davis v Alaska (415 US 308). In that case the United States Supreme Court required the disclosure of the juvenile record of a witness even though the State had an interest in preserving the confidentiality of the juvenile’s record.
But that case involved a true concern for fairness and bias of the witness. The defense sought to show that while the witness had identified the defendant, the witness was on probation for burglary. The defense, via the juvenile record, sought to argue that the witness, in identifying the defendant, could have acted out of fear of jeopardy to his probation as well as making a hasty and faulty identification to shift suspicion away from himself as the offender.
The personnel record there would help the jury in determining how much weight to be given the testimony of the witness. The materiality and relevancy of the information is obvious in the Davis case.
The case law has revealed the requisite that the information sought be shown to be relative and material even before an in camera inspection by the court will be ordered.
It is the considered opinion of this court that the personnel records of a police officer should not be examined by a Magistrate, prosecutor or defense counsel each time an arrest is made. This opinion is supported by a relatively new statute.
No doubt in response to all the case law on the topic, a relatively new statute has been legislated which deals with the personnel records of police officers (Civil Rights Law, § 50-a [L 1976, ch 413, § 1]). The statute states as follows: "1. All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law shall be considered confidential and not subject to inspection or review without the express written consent of such police officer except as may be mandated by lawful court order.
"2. Prior to issuing such court order the judge must review *200 all such requests and give interested parties the opportunity to be heard. No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review.
"3. If, after such hearing, the judge concludes there is a sufficient basis he shall sign an order requiring that the personnel records in question be sealed and sent directly to him. He shall then review the file and make a determination as to whether the records are relevant and material in the action before him. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting.
"4. The provisions of this section shall not apply to any district attorney or his assistants, the attorney general or his deputies or assistants, a grand jury, or any agency of government which requires the records described in subdivision one, in the furtherance of their official functions.” (Emphasis added.)
The statute sets forth a clear procedure. A hearing is held. If a "clear showing of facts sufficient to warrant [a request for] records” is demonstrated, the court may order their production. The court may then view the records in camera. If the records are determined to be material and relevant to the action, the court then may direct that the records be supplied to the party requesting them.
In retrospect, no "clear showing of facts sufficient to warrant [a request for] records” was made here to warrant an in camera inspection. Yet this court did order such an inspection, and it read the personnel records of the arresting officer.
It is this court’s opinion that the defense counsel has failed to demonstrate any theory of relevancy or materiality as to the information which could be present in the personnel records. Mere speculation and surmise that some information may be revealed which may provide the defense counsel with some facts to impeach the witness is not sufficient at this stage.
The defense’s request to examine the personnel records is denied.