OPINION OF THE COURT
Stanley Gartenstein, J.
The court is here presented with an issue of first impression focusing on discoverability of Police Department Civilian Complaint Review Board records by the District Attorney in charge of prosecuting the alleged crime for which the arrest in question took place. Defendant is a taxi driver charged with resisting arrest (Penal Law, § 205.30) and harassment (Penal Law, § 240.25) at Grand Central Station on June 15, 1978 in an incident involving a police officer one Cyrus Galetta. He *153 alleges, apparently with sufficient basis to cause investigation thereof by the District Attorney’s office, that a pattern of harassment of taxi drivers in this area by this officer exists; and that this pattern is well known to the police department by virtue of a series of civilian complaints against the officer. The District Attorney has subpoenaed the officer’s personnel records which include three known complaints allegedly for similar incidents. The police department moves to quash this subpoena.
At the outset, it is germane to point out that prior authority in this realm centers either on efforts by defendants prosecuted as a result of a particular officer’s arrest, or by persons suing the City of New York for damages resulting from an officer’s action. (Cf. People v Pack, NYLJ, April 27, 1978, p 11, col 4; Walker v City of New York, 90 Misc 2d 565; Dalia v Elder, NYLJ, Oct. 1, 1976, p 4, col 5; People v Gutterson, 93 Misc 2d 1105; Guzman v City of New York, 91 Misc 2d 270; People v Lugo, 93 Misc 2d 195; People v Sumpter, 75 Misc 2d 55.) We find no case law involving efforts by a prosecuting District Attorney to obtain these records. A reading and analysis of existing cases may provide sufficient basis for a ruling on the facts before us.
In Walker v City of New York (supra), an action for damages resulting from actions of an officer, the court considered the police department’s application for a protective order addressed to the officer’s personnel records and reviewed prior authority as follows: Olenick v City of New York (NYLJ, Sept. 22, 1960, p 10, col 5 [denial of discovery of transcript of police investigation of assault allegedly committed by the officer on basis of ongoing investigation]); Meyers v City of New York (NYLJ, Feb. 7, 1962, p 14, col 7 [facts similar to Olenick basing denial of inspection on confidentiality but directing production to refresh witness’ recollection]); Gotsch v City of New York (NYLJ, May 23, 1967, p 18, col 2 [outright denial of discovery based upon blanket confidentiality]); and Nunziata v Police Dept, of City of N. Y. (73 Mise 2d 29 [granting discovery to estate of police officer of his records to determine cause of death]). The court pointed out that prior restrictive holdings have become academic as a result of the so-called Freedom of Information Act, article 6 of the Public Officers Law, and denied the application for a protective order.
In People v Sumpter (75 Misc 2d 55, supra), an application by a defendant for records of this type was granted only to the *154 extent of directing production to the Trial Judge for his determination as to their use in cross-examination. The court pointed out the inherent unreliability of hearsay and unsubstantiated matter which inevitably find their way into such records.
People v Torres (77 Misc 2d 13) involved an altercation between an off-duty officer and defendants who were charged with assault. Defendants, who were Puerto Rican, sought discovery of personnel records to support their contention that the officer was known to be openly biased against Puerto Ricans. The court denied the application based on a lack of showing that production of these records would have any bearing on the merits of the charges themselves.
In People v Vasquez (49 AD2d 590) the Appellate Division reversed a denial of an application for production of personnel records in a situation where the prosecution had introduced evidence on its direct case of medals and citations presented to the officers. Credibility was the key issue owing to peculiar circumstances consisting of a dead informer allegedly contacting an officer who was previously convicted for shaking down narcotics dealers. The records were ordered produced to the Trial Judge for in camera viewing to determine relevance and materiality.
Finally, in People v Pack (NYLJ, April 27, 1978, p 11, col 4, supra), Judge Benjamin Altman rejected a claim for personnel records as "Brady” material citing People v Coleman (75 Misc 2d 1090), which held that the duty of the People to disclose exculpatory material did not extend to requiring the People to gather material which may or may not be exculpatory. (Brady v Maryland, 373 US 83.) Judge Altman, however, did order the production of these records under the Freedom of Information statutes enacted in 1977 (Public Officers Law, art 6).
It thus appears that in every case involving civilian complaints whether criminal or civil in nature, arising subsequent to the Freedom of Information Act, disclosure of these records has been granted.
We turn now to the specifics of the statute enacting confidentiality of police personnel records. If no specific provision thereof governs the situation before us, we intend to fill in the vacuum, as our colleagues did in Walker and Pack, with the Freedom of Information Act.
*155 As regards police civilian complaints, the statute provides (Civil Rights Law, § 50-a):
"Personnel records of police officers.
"1. All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law shall be considered confidential and not subject to inspection or review without the express written consent of such police officer except as may be mandated by lawful court order.
"2. Prior to issuing such court order the judge must review all such requests and give interested parties the opportunity to be heard. No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review.
"3. If, after such hearing, the judge concludes there is a sufficient basis he shall sign an order requiring that the personnel records in question be sealed and sent directly to him. He shall then review the file and make a determination as to whether the records are relevant and material in the action before him. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting.
"4. The provisions of this section shall not apply to any district attorney or his assistants, the attorney general or his deputies or assistants, a grand jury, or any agency of government which requires the records described in subdivision one, in the furtherance of their official functions.”
It is painfully clear that the District Attorney is specifically exempted from the operation of the confidentiality provisions of the first three subdivisions. A claim that the District Attorney’s office loses its standing as such under subdivision 4 either because (a) it seeks those records not to fulfill its prosecutorial function but to aid in its determination, if appropriate, not to prosecute; or (b) that in receiving and reviewing same, it may decide to prosecute the officer himself thus placing it in an adversarial stance against him rather than in a community of interest as contemplated by the statute, is unworthy of consideration. The office of District Attorney is a quasi-judicial one. Its determination not to *156 prosecute is of importance equal to and perhaps surpassing its obligation to prosecute. (People v Elfe, 34 Misc 2d 206; People v Jones, 32 Misc 2d 821; Matter of Hassan v Magistrates’ Ct. of City of N. Y., 20 Misc 2d 509.) Moreover, its duty of investigation cannot be contained within the four walls of material brought to it by law enforcement officials or private citizens, but must be held to include development of facts directly where evidence leads, even if this includes prosecution of the complainant. Both of these classic functions being within the purview of the District Attorney’s office, we hold this situation governed by subdivision 4 of section 50-a of the Civil Rights Law. Accordingly, there is no necessity to invoke the in camera provisions of its other provisions. The records shall be delivered directly to the District Attorney as called for in the subpoena.
We find no need to consider the applicability of the Freedom of Information Act under these specific facts.
It is relevant at this point to comment that the very pendency of a motion such as the one before us brought on by the police department which ordinarily shares a community of interest with the District Attorney may very well be the most significant unwitting compliment ever paid to the integrity and independence of the New York County prosecutor’s office.