Arnold L. Fein, J.
In this narcotics prosecution, defendant served a subpoena duces tecum of this court on the Police Department of the City of New York requiring the production of “personal records” of the two police officers who are expected to be the prosecution’s witnesses. The Police Department, through its own counsel, moved to quash the subpoena. On the argument of the motion, the, District Attorney in charge of prosecution of the case took no position.
The motion to quash is based on sections 1113 and 1114 of the New York City Charter, which the Police Department contends make such records confidential. On the argument I advised counsel that in my opinion these sections of the charter do not apply to the production of Police Department records *56 in pending litigation and do not make confidential relevant disciplinary records of the Police Department affecting police officers, when sought by a litigant whose rights are at issue in the case before the court (Blumkin v. City of New York, 183 Misc. 31). It was then stipulated that the Police Department would produce the disciplinary records of the department respecting the officers involved, to be examined by the court in camera.
The Police Department thereafter produced .Police Department forms, “ Citations and Charges ”, respecting the two officers. The only notations, with respect to each officer, were citations, “ excellent ” or “ meritorious ”. In the presence of the defendant, the court so advised the attorney for the defendant, the Assistant District Attorney, and the Police Department’s attorney, and read the substance of the reports into the record and then returned the forms to the representative of the Police Department.
Defendant’s attorney, contending that this was not a sufficient compliance with the subpoena, requested a direction that all of the personnel records respecting the two officers be produced so that it could be ascertained whether there might be a basis for cross-examination of the officers as to prior “ bad acts ”, in order to impeach their credibility.
The right of á defendant to confront and cross-examine witnesses is fundamental. This includes the right to attempt to impeach the credibility of a witness by proving his prior conviction of crime and by inquiring into facts showing his general reputation with respect to truth and veracity and any immoral, vicious or criminal act which might affect his character and tend to show the. witness is not worthy of belief. (People v. Zabrocky, 26 N Y 2d 530; People v. Schwartzman, 24 N Y 2d 241, cert. den. 396 U. S. 846; People v. Alamo, 23 N Y 2d 630; People v. Sorge, 301 N. Y. 198.) As these and other cases hold, such right even extends to cross-examination by the prosecution of a defendant when he testifies in his own behalf in a criminal case. It is no secret that this is very often the only reason a defendant does not take the stand. This consequence has caused serious criticism of the rule and recent attempts to limit its impact. (United States v. Puco, 453 F. 2d 539; United States v. Palumbo, 401 F. 2d 270, cert. den. 394 U. S. 947; Luck v. United States, 348 F. 2d 763.) The considerations are the nature of the conviction or prior “bad act”, its age, its real significance in testing credibility as balanced against the need for the witness’ testimony in determining the ultimate issue of guilt or innocence. With *57 respect to a defendant, the real question is whether he will be convicted because he is guilty of the crime charged or because he has a bad record. (People v. Goldstein, 295 N. Y. 61, 64.)
Although cross-examination for this purpose is subject to the sound discretion of the Trial Judge (Langley v. Wadsworth, 99 N. Y. 61), in this State it cannot be completely foreclosed. (People v. Zabrocky, 26 N Y 2d 530, supra; People v. Schwartzman, 24 N Y 2d 241, supra; People v. Alamo, 23 N Y 2d 630, supra; People v. Sorge, 301 N. Y. 198, supra; CPL 60.40; People v. Gray, 41 A D 2d 125; People v. Pritchett, 69 Misc 2d 67; People v. Palmeri, 58 Misc 2d 288; cf. contra, People v. King, 72 Misc 2d 540, as to an old prior conviction.) Although these authorities deal principally with prior convictions and the problem as it affects the rights of defendants in criminal prosecutions, the same considerations should apply to other witnesses (cf. CPLR 4513).
In exercising his discretion to limit such cross-examination, the Trial Judge must require the cross-examiner to make a good-faith showing as a predicate for such inquiry (People v. Sorge, 301 N. Y. 198, supra; People v. Alamo, 23 N Y 2d 630, supra). Defendant contends that unless he is afforded an opportunity to examine the Police Department personnel records respecting the two officers, he will be unable to make the requisite good-faith showing. The Police Department’s opposition is primarily based upon the claimed confidentiality of the records and the fact that a subpoena duces tecum cannot be used to search for evidence in the absence of some showing that such evidence exists.
Any person may be compelled to supply evidence whether verbal or documentary which may be relevant. The court is entitled to every man’s evidence. Personal convenience or personal preference is immaterial, unless it is shown that production would violate a constitutional or statutory privilege. (Matter of Edge Ho Holding Corp., 256 N. Y. 374; Matter of Ebbets, 155 Misc. 870.) In the absence of such privilege, the only question is whether the introduction of the evidence would be improper on the grounds of irrelevancy, immateriality, or incompetency. Sections 1113 and 1114 of the New York City Charter only limit discovery of Police Department records in applications made by taxpayers or citizens and not where sought by a litigant such as a defendant in a criminal prosecution whose rights are at issue.
Reports made by police officers in the regular course of their duty, unless “ exempt ” as internal documents or work papers, *58 are discoverable and usable where they are relevant to the matters in issue, including the guilt or innocence of a defendant. This is reflected in CPL article 240, the discovery article. CPL 240.20 (subd. 3) authorizes discovery at the request of a defendant, subject to appropriate safeguards (CPL 240.20, subds. 4, 5) “ with respect to any other property specifically designated by the defendant, except exempt property, which is within the possession, custody or control of the district attorney upon a showing by the defendant that (a) discovery with respect to such property is material to the preparation of his defense, and (b) the request is reasonable.”
. Although the section applies to property within the possession, custody or control of the District Attorney, it must follow that property in the possession of the Police Department is subject to such discovery, if not exempt, and the other conditions are met. Even where otherwise exempt, police reports and records may become discoverable and usable by the cross-examiner, if they are referred to by the witness to refresh his recollection or if they contain exculpatory material. (Brady v. Maryland, 373 U. S. 83; People v. Rosario, 9 N Y 2d 286.)
It is manifest that if the defendant through other means could ascertain whether the police officers were guilty of “ bad acts ” which might affect their credibility, he could, on an appropriate good-faith showing, cross-examine the police officers with respect thereto, just as he could examine any other witness. Police officers stand on no different footing than any other witness.
If such information is not otherwise available, may it be sought by court process? No authorities have been cited or found passing on whether a subpoena duces tecum can be used as a basis for compelling production and examination of personnel records of a witness in order to ascertain whether such records disclose a basis for an inquiry of the witness on cross-examination as to alleged prior “bad acts” which might impeach his credibility.
The right of a defendant to compulsory process to secure necessary evidence relevant to his defense is constitutionally protected unless some privilege attaches to the evidence sought.
A “public interest” privilege may inhibit disclosure. The records of the Commissioner of Investigation of the City of New York are privileged because of the need of the Commissioner to assure informants of confidentiality so as to secure needed information in the public interest. In so holding, the court said in Matter of Langert v. Tenney (5 A D 2d 586, 589): *59 “ upon a criminal trial the court has power to compel the disclosure of matter admissible in evidence, relevant to the innocence of the defendant, and not countervailed by a statutory public interest (People v. Walsh [262 N. Y. 140]; People ex rel. Lemon v. Supreme Court [245 N. Y. 24]; Roviaro v. United States, 353 U. S. 53).” So, too, the records, of the Department of Health of the City of New York with respect to communicable diseases are privileged in the public interest in order to insure that persons having such diseases may secure proper treatment without fear that the information will be disclosed (McGowan v. Metropolitan Life Ins. Co., 234 App. Div. 366, app. dsmd. 259 N. Y. 454).
Similar is the qualified informant’s privilege, grounded upon the need of the prosecution to obtain information from informants and to utilize their services without exposing them to intimidation, physical harm or other reprisal and to avoid interference with continuing investigations. (Roviaro v. United States, 353 U. S. 53; McCray v. Illinois, 386 U. S. 300; Pecue v. West, 233 N. Y. 316; People v. Goggins, 42 A D 2d 227; People v. Delgado, 40 A D 2d 554.)
This public interest privilege is qualified -and measured by the balance of convenience between the government’s need to withhold évidenee which might be prejudicial to the public interest because concerned either with the administration of penal justice or the administration of the government and its weight, usefulness or value to the defendant in his defense. Where public safety is not involved, the privilege does not apply. (People ex rel. Heller v. Heller, 184 Misc. 75.)
Thus, the records of a District Attorney involving criminal proceedings are available, even in a civil action, in the absence of statutory or judicial privilege or exemption, although examination of such records was required to be subject to court supervision. (Cohalan v. Newsday, 228 N. Y. S. 2d 504.)
There is obviously a public interest in insuring that the Police Department will conduct thorough investigations of the background of police officers before they are appointed, and will maintain continuing records of their performance of duty and of complaints against them and of departmental action with respect thereto. It is obvious that such records should be available only to those who have a need to know their contents for the purpose for which they are maintained. There is undoubtedly a similar private interest with respect to nonpublic employees.
*60 In onr day, when record keeping respecting our lives and behavior, whatever our calling, is widespread and kept in a multitude of places for a variety of purposes, it is appropriate to question whether compulsory court process should be used to obtain such records in order to ascertain whether any witness, be he police officer or ordinary citizen, may be guilty of “bad acts” which might be used to impeach his credibility. Does the ordinary citizen who becomes a witness make himself vulnerable to a cross-examiner so that compulsory process can be used to obtain such data respecting his life, because by happenstance he witnesses an accident or a crime or because as part of his duty or for his own purposes he participated in a commercial or other transaction? It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility. The fear of such disclosures may well preclude people from making themselves available ,as witnesses and dry up valuable sources of evidence. If it is held that the Police Department is required to produce such records as to police officers, why not all governmental agencies and any employer, credit card company, bank, business or corporation with respect to any witness ? The private life of every witness called for whatever purpose would in effect become an open book.
However, it is not necessary to decide this broader issue. As defendant argues, his own private life has become an open book. The Police Department, in the course of its investigation, has undoubtedly obtained evidence respecting his entire background and activities, including his criminal record, which will be utilized against him if he takes the stand. The same is undoubtedly true with respect to any witness known to the police. It is palpable that such evidence is not ordinarily obtained primarily to impeach credibility, but as part of the Police Department’s routine in performing its duty to investigate crime and those suspected of criminal activity. Nonetheless it' may be and is used to attack credibility. This suggests that the defendant is entitled to an equal opportunity to obtain such data. In "this context it is evident in recent holdings and statutes that there is a growing recognition of the propriety of requiring mutual disclosure between the prosecution and the defense. Thus the Oregon and New York notice-of-alibi statutes have "been held unconstitutional or modified in application because they do not provide for reciprocal rights, (Wardius *61 v. Oregon, 412 U. S. 470; People v. Elliott, 74 Misc 2d 974; People v. Haynesworth, 75 Misc 2d 75; see CPLR 240.20, subd. 4 relating to reciprocal discovery.)
Moreover, it must be recognized that in the usual narcotics prosecution such as this, the prosecution’s evidence will largely consist of the testimony of police officers, and the defense evidence, if any, will solely be the testimony of the defendant. Verdicts in such cases in the main turn on the question of credibility. There is undoubtedly a duty on the part of the prosecution to make known any exculpatory evidence in its possession. This would include criminal records of the prosecution’s witnesses or other matter going to their credibility. (Jencks v. United States, 353 U. S. 657; People v. Rosario, 9 N Y 2d 286, supra; People v. Fein, 18 N Y 2d 162, 172.)
It must be held, therefore, that where a public officer such as a policeman is called as a witness, in the performance of his public duty, there is a duty on the prosecution to make available to the court any information in its possession or in the Police Department’s possession which might go to the issue of the defendant’s guilt, including evidence affecting the credibility of such officer. The court cannot, by quashing the subpoena, preclude the possibility of defense discovery of such evidence, if it exists.
“ Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold.” (Matter of Edge Ho Holding Corp., 256 N. Y. 374, 382, supra.)
The question cannot be ascertained by motion to quash. It can only be determined upon the trial. However, similar to the procedure respecting informants, it is appropriate that such records not be made available to counsel, in the first instance. They should be produced to the Trial Judge, who can examine the records and in the exercise of discretion determine their relevancy under the circumstances of the trial.
Accordingly, the motion of the Police Department to quash the subpoena is denied. The Police Department is directed to produce the personnel records of the two officers involved to the Trial Judge sealed, for examination and determination by such Judge whether any information contained in such records should be made available to counsel for the defendant in aid of cross-examination to impeach credibility or for other purposes.
A copy of this order is to be served on the Police Department.