Abbaham I. Kalina, J.
This is a motion to quash subpoenas served on the Police Department of the City of New York requiring the production of “ personnel records ” of police officers who, defendants allege, will be called by the People in each of the narcotic prosecutions in which they are named as a defendant.
In oral arguments before the court, the defendants’ counsel stated that the sole purpose for seeking the personnel folders of these officers was to ascertain whether information contained in the folders might reveal something in the officers’ pasts which may form the basis for impeaching the credibility of the officers on cross-examination. Counsel for the defendants urged upon the court the necessity for such information because, in a narcotic prosecution, the testimony of police officers is likely to be the principal, if not the sole, evidence on which the jury or the court must determine the guilt or innocence of the defendants. It is thus argued that under such circumstances, the truth and veracity of the testifying police officer becomes a most significant issue, the determination of which will result in the defendant’s being found guilty or not guilty.
Defense counsel urges the court to adopt the conclusion reached by my learned colleague, Mr. Justice Arnold Fein, in the case of People v. Sumpter (75 Misc 2d 55). In Sumpter the court denied the motion to quash the subpoena, but directed the Police Department to produce the personnel folder to the Trial Judge sealed, for his examination, in camera, and determination whether any information contained in such records should be made available to defense counsel. In the case of People v. Fraiser (75 Misc 2d 756), Judge Gibbons of the Nassau County Court reached a contrary conclusion. In Fraiser the court denied an application for a subpoena duces tecum for the police department personnel files of police officers.
Justice Fein’s decision and defense counsel’s argument can be reduced to four principal areas:
First: that the right of a defendant in a criminal prosecution to confront witnesses is fundamental, and the attempt to discredit the witness by impeaching his credibility should not be restricted except in the sound discretion of the Trial Judge. (People v. Zabrocky, 26 N Y 2d 530; People v. Schwartzman, 24 N Y 2d 241, cert. den. 396 U. S. 846; People v. Alamo, 23 N Y 2d 630; People v. Sorge, 301 N. Y. 198; Langley v. Wadsworth, 99 N. Y. 61.)
Second: in limiting this right of cross-examination in his discretion, the Trial Judge must require the cross-examiner to *646 make a good-faith showing as a predicate to such inquiry, and that in the absence of access to the personnel folders, defense counsel cannot show the required good faith (People v. Sorge; People v. Alamo, supra).
Third: that in most narcotic prosecutions, the evidence against the defendant will largely consist of testimony of police officers, and defense evidence, if any, will solely be the testimony of the defendant.
Fourth: that where a police officer such as a policeman is called as a witness, in the performance of his public duty, there is a duty on the prosecution to make available to the court any information in its possession or in the Police Department’s possession which might go to the issue of the defendant’s guilt, including evidence affecting the credibility of such officer.
Judge Gibbons’ decision can be reduced to four principal areas:
First: That "documents are not subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves.” (People ex rel. Lemon v. Supreme Ct., 245 N. Y. 24, 29.)
Second: That “ inasmuch as evidence relating to the misdeeds of a witness for the purpose of impeaching his credibility concerns itself with matters collateral to the main issue of the case, a limitation is imposed upon such evidence to the extent that it may only be obtained by interrogation of the witness, whose answers are binding on the examiner and which may not be contradicted by other extrinsic evidence.” (75 Misc 2d 756, 758.)
Third: That the “ rule is clear that while a witness’ testimony regarding collateral matters may not be refuted by the calling of other witnesses or by the production of extrinsic evidence * * * there is no prohibition against examining the witness himself further on the chance that he may change his testimony or his answer ” (75 Misc 2d 756, 759, citing People v. Perry, 277 N. Y. 460; People v. Malkin, 250 N. Y. 185; People v. Freeman, 203 N. Y. 267).
Fourth: That evidence concerning the credibility of a witness does not meet the test spelled out in Brady v. Maryland (373 U. S. 83) because we are dealing here with impeaching evidence of a truly collateral matter, and not evidence which would bear materially on the question of the defendant’s guilt or punishment.
Other than Mr. Justice Fein’s decision in People v. Sumpter (supra) and Judge Gibbons’ decision in People v. Fraiser *647 (supra), there do not appear to be any New York cases dealing with the question of obtaining Police Department personnel records in criminal cases by subpoena duces tecum. Research by the court of case law in other jurisdictions discloses a paucity of cases dealing with this issue even in a tangential manner.
In United States v. Marcello (423 F. 2d 993, cert. den. 398 U. S. 959); People v. Barker (78 Ill. App. 2d 298); Pitchess v. Superior Ct., Los Angeles County (109 Cal. Rep. 596 [Court of Appeals, 2d Dist.]); and City of Los Angeles v. Superior Ct., Los Angeles County (33 Cal. App. 3d 778), requests to subpoena the personnel records of police officers were denied.
In State v. Fleishman (495 P. 2d 277 [Ct. of Appeals of Oregon, Dept. 1,1972]) and State ex rel. De Concini v. Superior Court (20 Ariz. App. 33 [Ct. of Appeals of Arizona, Div. 2]) the requests for issuance of the subpoenas were granted.
In Marcello (supra) the defendant had been convicted for assaulting and intimidating a Federal officer. The court held that the trial court order quashing the subpoena requesting personnel records of the police who had been assaulted was proper. In Barher (supra), the court held that the rule that a defendant is entitled to examine statements of a witness in the possession of the prosecution to discover inconsistencies for impeachment purposes did not go so far as to require the police department to produce personnel records. In Pitchess (supra), the defendant was charged with battery against four Sheriff’s deputies. The lower court denied a motion to quash the subpoena and ordered the Sheriff’s office to produce records “ relating to any allegations by members of the police involving the alleged excessive use of force ’ ’ by the deputies involved. The appellate court reversed the lower court order. The court based its reasoning on the grounds that the declaration in support of the subpoena was insufficient factually to support its issuance because it failed to state how the officers used excessive force and failed to allege what, if any force the defendant used. That to obtain a subpoena whether in a civil or criminal case, the applicant had to show specific facts in justification and must specify in full detail the materiality of the data sought to the issue involved. It is interesting to note that the court did not indicate that an in camera inspection by the court was necessary. In City of Los Angeles (Ferguson) (33 Cal. App. 3d 778, supra), the plaintiff Ferguson brought a personal injury action for assault against a police officer, a member of the Los Angeles Police Department. She moved for discovery of the personnel folder of the defendant, which was opposed on the ground of *648 privilege. The Los Angeles Police Department also opposed the motion and asserted that inspection of the personnel file would constitute an unwarranted invasion of personal privacy and a disclosure of confidential information contrary to public interest. The Superior Court ordered the personnel folder produced, and defendant appealed on grounds that the requested material was irrelevant and privileged. In upholding the defendant’s claim of privilege, the court vacated the order to produce the personnel records and stated (pp. 785-786):
“ Such raw data — which may include unverified and unfounded complaints, confidential investigations on the officer by his colleagues and superiors, and such privileged material as medical and psychiatric examinations — [are] not lightly to be invaded * * * Confidential personnel files are vital to the development of full information on members of the police department. Proper supervision and control of any large body of subordinates demands comprehensive personnel records which will fully and accurately reflect their performances, a demand that would be largely frustrated if personnel records became routinely available for public inspection * * * ‘ The members of a police department must be able to rely on their confidential records and notations being preserved for their intentional use . . . for if it were otherwise, the knowledge that some of the confidential information recorded might be later exposed to outside parties would have a certain and chilling effect upon the internal use of such record making. ’ (Kott v. Perini (D. C. 1968) 283 F. Supp. 1, 2.) ”
In State v. Fleishman (495 P. 2d 277, supra) the appellate court reversed a lower court ruling which after an in camera inspection of the police file, an approved Oregon court rule procedure, had denied the defendant the right to inspect the file. However, it should be noted that the court stated (p. 282): “We do not mean to suggest that criminal defendants can routinely have access to the personnel records of policemen who testify against them. We only hold on this unusual record ex-Officer Loos’s records contain evidence ‘ which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence.’ ”
In De Concini (20 Ariz. App. 33, supra) the trial court held an m camera inspection of the personnel records of the police officers and allowed inspection. The appellate court held that while the unusual circumstances of the case justified allowance of some disclosure of some of the records, it did not justify the order to produce all such records. The court stated that *649 “ Exercise of judicial discretion * * * is circumscribed by the reasonableness of the request since mere ‘ fishing expeditions ’ are not to be countenanced.”
In Carlisle v. Bennett (268 N. Y. 212, 217-218) the court stated: “The power to require a witness to produce books and papers is necessarily limited to a ‘ proper case, ’ even though those words are not expressly used in the statute here as they were in the statute considered in Matter of Hirshfield v. Craig (239 N. Y. 98). A proper case is ordinarily one where the books and papers called for have some relevancy and materiality to the matter under investigation.” (See, also, Matter of Davies, 168 N. Y. 89; Dunham v. Ottinger, 243 N. Y. 423.)
A subpoena duces tecum cannot be used for the purpose of discovery or to ascertain the existence of evidence. (Matter of Gay Cottons v. Hogan, 55 Misc 2d 126, 128; Cataldo v. County of Monroe, 38 Misc 2d 768, 770.) A defendant has no right to invoke the means of examining the prosecution’s evidence merely in the hope that something may turn up to aid him (People v. Marshall, 5 A D 2d 352, affd. 6 N Y 2d 823).
The proper means of discovery in a criminal case is by motion as provided in article 240 of the CPL. A subpoena duces tecum should not be used to circumvent limitations on discovery by either the prosecutor or the defendant and a subpoena for the production of material exempt from discovery should not be issued by the court (CPL 240.20, subd. 3). There is no question that the defendant would not be permitted to inspect the personnel folders as a matter of right in a discovery proceeding.
The discovery statute, article 240 of the CPL, provides for discovery of statements and property that are within the possession, custody or control of the District Attorney. Ordering the District Attorney to produce these records might very well prove futile since the Police Department would not be bound to surrender documents pursuant to an order to which it was not a party. Since CPL 240.20 does not mention documents under the control of an agency other than the District Attorney’s office, the court would be re-writing the statute by having a defendant’s attorney told to bring a motion pursuant to CPL 240.20 against the Police Department.
To have these records obtained by a motion for discovery would, in my opinion, require an amendment to the Criminal Procedure Law similar to that of the Arizona statute (De Concini, supra) which permits a court order to be directed to any party in the possession of evidence. Absent such an *650 amendment, it would appear that a subpoena would be the only method by which such documents could be obtained.
To permit the production of the personnel files in this case by way of a subpoena duces tecum would in the opinion of the court broaden and extend the discovery provisions in the CPL far beyond that which our courts and other jurisdictions appear to have allowed. The court is of the further opinion that the Legislature of our State in enacting laws relating to the issuance of subpoenas never intended that a subpoena duces tecum could be used to expand the normal use of discovery" and inspection in criminal cases.
The courts in this State have recognized a privilege against discovery where a public interest will be served (People v. Walsh, 262 N. Y. 140; cf. Matter of Langert v. Tenney, 5 A D 2d 586).
It should be borne in mind that in most cases the officer is not the aggrieved party, i.e., not the victim of the crime charged, but merely an agent of the State, which is the real party in interest. Would a subpoena duces tecum issue for the People to compel defendant’s employers to produce personnel records of the defendant without a showing of relevancy and materiality? It is difficult to imagine such a course of action in our present society where there is so much concern for the protection of the individual from a fetish for maintaining and computerizing details of a citizen’s personal life.
This court is of the opinion that it is in the public interest to maintain confidentiality of personnel folders of police officers. The court recognizes the fact that the Police Department conducts thorough investigations of police candidates before they are appointed because of the .sensitive nature of their employment, the position of public trust which they will hold and the formidable power entrusted to them by virtue of their statutory functions.
In a memorandum issued by the Police Department October 17, 1973, it is stated that the personnel folders are to be treated as confidential according to .guidelines set forth in the memorandum. In the memorandum it is stated as follows: “ It is in the interest of the department in carrying out its objective of selecting the most qualified men and women to serve the people of the City of New York as police officers to encourage a frank disclosure of all facts which may be considered in passing on the character .of candidates. In return for eliciting such personal information from applicants, it is just and proper that we respect the confidence of the individual who is subjected to *651 such scrutiny by insuring that appropriate safeguards are taken to maintain the integrity and confidentiality of these personnel records. ’ ’
This court is of the further opinion that it is not a condition of a police officer’s employment that his life story should be the subject of perusal by Judge, prosecutor and defense counsel each time he makes an arrest. To impose such a broad burden on the officer would be tantamount to an unconstitutional deprivation of his right of privacy. (Cf. Griswold v. Connecticut, 381 U. S. 479.)
The laws of our State dealing with the right of a defendant ■to confront and cross-examine a witness and the extent to which such examination is permissible for impeachment purposes provide the accused in a criminal case sufficient safeguards to protect himself from unfounded accusations. (See People v. Schwartzman, 24 N Y 2d 241, supra; People v. Zabrocky, 26 N Y 2d 530, supra; People v. Alamo, 23 N Y 2d 630, supra; People v. Sorge, 301 N. Y. 198, supra.)
Under our current judicial decisions and statutes stemming from these decisions, there has developed a system of criminal jurisprudence which provides maximum fairness and constitutional safeguards for the accused.
An example of this is the landmark case of People v. Rosario (9 N Y 2d 286) which held that the defendant is permitted to examine a witness’ prior statement, whether or not it varies from his testimony on the stand, for use in cross-examination for impeachment purposes. However, the court stated (p. 290): "It does not mean that the defense will be able to go on a tour of investigation seeking generally useful information. Our decision presupposes that the statement relates to the subject matter of the witness’ testimony, that it is to be used for impeachment purposes only after direct examination and that the necessities of effective law enforcement do not require that the statement be kept secret or confidential.” (See, also, Jencks v. United States, 353 U. S. 657; People v. Fein, 18 N Y 2d 162; Gordon v. United States, 344 U. S. 414, 419.)
It is the court’s considered judgment that the defense counsel have failed to demonstrate any theory of relevancy or materiality of the information which may perchance be contained in the police records except for the mere speculation and surmise that some information may be revealed which may provide the defense counsel to cross-examine the witness for possible impeachment.
*652 In the absence of showing prima facie that such information does exist, the court is of the opinion .that such records are not discoverable by compulsory process. Furthermore, if such showing is made to the satisfaction of the court, a demand to divulge the information can only be honored when the police officer’s credibility is in issue, i.e., after he has taken the witness stand and testified. (People v. Rosario, 9 N Y 2d 286, supra.)
At such stage of the .trial the court can determine if the nature of the cross-examination of the police officer requires that a voir dire be held in the absence of the jury to determine the issue whether or not the information sought should be discoverable. As stated by Judge Gibbons in People v. Fraiser (75 Misc 2d 756, 763, supra), “ The court does not hold that under no circumstances will .personnel records be disclosed.”
Until such time as our criminal statutes are modified and until such time as our appellate courts re-evaluate their prior decisions on the subject matter at issue in this case, a defendant must proceed to trial and defend himself in accordance with the means afforded to him by the substantive and procedural laws of our State. Our appellate courts have not as yet declared that a defendant can resort to unfettered and unlimited discovery devices in the eternal hope that perchance they may reveal evidence which may be helpful to his defense. (Cf. People v. Ganci, 27 N Y 2d 418, 424, 425.)
Accordingly, the motion to quash the subpoena duces tecum in each of the cases is granted in all respects.