OPINION OF THE COURT
Stanley Ostrau, J.
This is a motion made pursuant to CPLR 2304 to quash a subpoena duces tecum served upon the New York City Transit Authority by the District Attorney who seeks the entire personnel file of the defendant, a New York City Transit Police Officer, who is a police officer as defined in CPL 1.20 (subd 34, par [e]), on the grounds that the subpoena seeks privileged material and that it is too broad in scope.
The proper resolution of the application calls for the inter *83 pretation of section 50-a of the Civil Rights Law, which was enacted by the 1976 Legislature effective June 21, 1976 (L 1976, ch 413).
Prior to the enactment of this section the courts wrestled with the general problem of subpoenas which were being served by defense counsel on the police authorities seeking the examination of the personnel file of prospective police witnesses.
Subsequent to People v Sumpter (75 Misc 2d 55, infra), the New York courts, in considering this problem, uniformly rejected requests for the personnel files of such prospective witnesses. In a line of cases beginning with People v Fraiser (75 Misc 2d 756), the courts expressed the fear that such files often were not material or relevant and that the examination of such files often constituted a mere fishing expedition for information. The court in Fraiser (supra) cited People ex rel. Lemon v Supreme Ct. (245 NY 24, 29) wherein it was stated "Documents are not subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves”.
Similarly, in People v Coleman (75 Misc 2d 1090, 1095) in which an application for a judicial subpoena duces tecum seeking the production and examination of the personnel files of the complaining police officers was denied, the court stated: "Police officers are likely to suffer many complaints about their professional conduct since those whom they arrest or reprimand are not often pleased and seldom, if ever, can be fair critics. A cross-examination which recites a litany of complaints from such sources could easily mislead rather than enlighten.”
Both People v McArthur (75 Misc 2d 979) and People v Norman (76 Misc 2d 644) relied on the holding in People v Fraiser (75 Misc 2d 756, supra) in quashing a subpoena for police personnel files, on the grounds that there was no showing of relevancy or materiality of information which may only possibly be in the personnel files sought by defendant. The same result was reached in People v Torres (77 Misc 2d 13) which cited People v Coleman (75 Misc 2d 1090, supra) and declined to follow the holding of People v Sumpter (75 Misc 2d 55, supra).
In the Norman case (supra), the court made some additional pertinent observations. It cited therein City of Los Angeles v *84 Superior Ct. of Los Angeles County (33 Cal App 3d 778); a personal injury action wherein the plaintiff moved for discovery of the personnel folder of the defendant police officer. The application was opposed on the ground of privilege. The trial court granted the application. On appeal, the Appellate Court vacated the order and stated (pp 785-786): "Such raw data— which may include unverified and unfounded complaints, confidential investigations on the officer by his colleagues and superiors, and such privileged material as medical and psychiatric examinations — [are] not lightly to be invaded * * * Confidential personnel files are vital to the development of full information on members of the police department. Proper supervision and control of any large body of subordinates demands comprehensive personnel records which will fully and accurately reflect their performances, a demand that would be largely frustrated if personnel records became routinely available for public inspection * * * 'The members of a police department must be able to rely on their confidential records and notations being preserved for their internal use * * * for if it were otherwise, the knowledge that some of the confidential information recorded might be later exposed to outside parties would have a certain and chilling effect upon the internal use of such record making.’ (Kott v. Perini [D.C. 1968] 283 F. Supp. 1,2.)” The court in People v Norman (76 Misc 2d 644, 651, supra) further stated: "This court is of the further opinion that it is not a condition of a police officer’s employment that his life story should be the subject of perusal by Judge, prosecutor and defense counsel each time he makes an arrest. To impose such a broad burden on the officer would be tantamount to an unconstitutional deprivation of his right of privacy. (Cf. Griswold v. Connecticut, 381 U.S. 479.)” (Emphasis supplied.)
In People v Sumpter (75 Misc 2d 55) decided prior to the afore-cited cases and not followed by any of the subsequent decisions, the defendant served a subpoena duces tecum on the New York City Police Department requiring the production of "personnel records” of two police officers, prospective prosecution witnesses. The police department moved to quash. Mr. Justice Fein, in a prescient decision, in effect set down the basic procedure presently set forth in section 50-a of the Civil Rights Law, in that he denied the motion to quash but did direct an in camera inspection, and stated the following (p 60): "It has been widely noted that such records often contain raw *85 data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility. The fear of such disclosures may well preclude people from making themselves available as witnesses and dry up valuable sources of evidence. If it is held that the Police Department is required to produce such records as to police officers, why not all governmental agencies and any employer, credit card company, bank, business or corporation with respect to any witness? The private life of every witness called for whatever purpose would in effect become an open book.”
Thus it would appear that the law prior to the enactment of section 50-a of the Civil Rights Law was that the police personnel files were confidential and a violation of the confidential nature of such files would have a chilling effect on the preparation of the files. The material in the files is nothing but raw information, uncorroborated material, unsubstantiated accusations, perhaps poison pen letters, credit ratings, family psychiatric history, or some totally irrelevant material that may prove to be embarrassing or irreparably damaging to the reputation of the individual. It appears to this court that the confidentiality of such files applies to all persons and to all cases. It is therefore clear that the personnel files of any police officer were not open to inspection by a District Attorney or by anyone else. The most the law permitted was an in camera inspection as indicated in People v Sumpter (75 Mise 2d 55, supra).
What effect, if any, has section 50-a of the Civil Rights Law had on the afore-cited decisions? Section 50-a of the Civil Rights Law reads as follows:
"1. All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law shall be considered confidential and not subject to inspection or review without the express written consent of such police officer except as may be mandated by lawful court order.
"2. Prior to issuing such court order the judge must review all such requests and give interested parties the opportunity to be heard. No such order shall issue without a clear showing *86 of facts sufficient to warrant the judge to request records for review.
"3. If, after such hearing, the judge concludes there is a sufficient basis he shall sign an order requiring that the personnel records in question be sealed and sent directly to him. He shall then review the file and make a determination as to whether the records are relevant and material in the action before him. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting.
"4. The provisions of this section shall not apply to any district attorney or his assistants, the attorney general or his deputies or assistants, a grand jury, or any agency of government which requires the records described in subdivision one, in the furtherance of their official functions.”
Thus, rather than making such police files an open book, the section sets strict limitations on the availability of such files. The entire personnel file is available to no one, including District Attorneys, without the express written consent of the police officer. In the absence of such consent, the section permits an interested party to request an in camera inspection of the personnel file. The necessity for a hearing and an in camera inspection of the evaluation portions of these records does not apply to those agencies enumerated in subdivision 4 of section 50-a of the Civil Rights Law.
There has thus been an expansion on the prior case law. Now for the first time a portion of the personnel file, specifically those records used to evaluate performance toward continued employment or promotion may be made available upon a clear showing by an interested party of facts sufficient to warrant an in camera inspection by the Judge. After such an inspection, only the relevant and material portion shall be made available to the requesting party.
An examination of the Freedom of Information Law (Public Officers Law, art 6), does not lead to a different conclusion.
Section 89, formerly section 88, of the Public Officers Law governs access to all public records. Section 89 (subd 2, par [b]) deals specifically with those records or details of records which, when made available, constitute "an unwarranted invasion of personal privacy”, and section 89 (subd 2, par [a]) sets out the procedure whereby the Committee on Public Access to Records is authorized to promulgate guidelines *87 concerning such records or details. "In the absence of such guidelines, an agency may delete identifying details when it makes records available.”
The afore-mentioned committee has in fact not promulgated any such guidelines (21 NYCRR 1400.1 et seq.) thus leaving to the individual governmental agencies the power to set down their own regulations. The government agency in the instant case, the New York City Tranist Authority, has promulgated such guidelines in 21 NYCRR 1053.4. Those items which are deemed to be an unwarranted invasion of personal privacy include, among others: (1) such personal matters as may have been reported in confidence to the authority and which are not relevant or essential to the ordinary work of the authority; (2) employment, medical or credit histories or personal references of applicants for employment; (3) items involving the medical or personal records of a client or patient in a hospital or medical facility; and (4) items of a personal nature when disclosure would result in economic or personal hardship to the individual, and such records are not relevant or essential to the ordinary work of the authority.
The Legislature has articulated the important public policy of safeguarding New York’s public employees against unreasonable access to their personnel files. It has done so through statute by its creation of a special committee, one of the functions of which is to insure the privacy of such records; and by its permission to the individual agencies to promulgate regulations which carry out the intent of the statute. The importance of providing access to such files is great, but it is equally clear that the importance of avoiding abuse of this access and of protecting the privacy of these files where appropriate is also great.
It should be noted that all the afore-cited decisions were decided prior to the enactment of the Freedom of Information Law (Public Officers Law, art 6) which became effective September 1, 1974. Despite the existence of this "Sunshine Law”, the courts had uniformly held that the entire personnel file of a police officer was not subject to disclosure through the use of the subpoena.
Section 50-a of the Civil Rights Law and section 89 of the Public Officers Law were not intended to upset the delicate balance between these two important concepts. They do not allow total access by anyone, whether defense counsel, District Attorney or member of the public to the contents of such *88 personnel files. Viewed in light of its past actions, this plainly was not the intent of our Legislature.
Accordingly, the motion to quash is denied as to those parts of the personnel files which pertain to evaluation towards continued employment or promotion, and the motion is granted as to those portions which do not fall within this classification. The determination of what falls within this classification and what without, will be made during an in camera inspection by this court.