OPINION OF THE COURT
Herbert I. Altman, J.
The defendants have moved for the issuance of a subpoena duces tecum upon the commanding officer of the Arrest and Crime Bureau of the New York City Police Department seeking the police records or files, including records of the Civilian Complaint Review Board (CCRB), with regard to civilian complaints or police department proceedings against three named police officers. By their memorandum of law, defendants limit their request to so much of such records "as relates to police department investigations/proceedings/determinations relating to prior misconduct, particularly physical abuse.”
Each of the three defendants is charged with the crimes of assault in the third degree (Penad Law, § 120.00), riot in the second degree (Penal Law, § 240.05), resisting arrest (Penal Law, § 205.30) and the violation of disorderly conduct (Penal Law, § 240.20). Defendants allege that they did nothing illegal and that any physical contact between them and the police officers was wrongfully initiated by the officers. They argue that the records they seek not only are necessary to impeach credibility, but also bear on the issue of justification and the factual question of who initiated the physical contact.
PERTINENT STATUTES
The resolution of the issues presented in this motion involves the interplay of two statutes and a local law. Section 50-a of the Civil Rights Law governs the production of person *735 nel records of police officers. The applicable subdivisions of that statute provide:
"1. All personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency * * * shall be considered confidential and not subject to inspection or review without the express written consent of such police officer except as may be mandated by lawful court order.
"2. Prior to issuing such court order the judge must review all such requests and give interested parties the opportunity to be heard. No such order shall issue without a clear showing of facts sufficient to warrant the judge to request records for review.
"3. If, after such hearing, the judge concludes there is a sufficient basis he shall sign an order requiring that the personnel records in question be sealed and sent directly to him. He shall then review the file and make a determination as to whether the records are relevant and material in the action before him. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting.”
Section 87 of the Public Officers Law (part of the Freedom of Information Law [FOIL]) provides that public agencies shall promulgate rules and regulations in accordance with the various FOIL provisions to provide public access to records. In pertinent part, subdivision 2 of section 87 provides that "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that * * * (g) are inter-agency or intra-agency materials which are not: i. statistical or factual tabulations or data; ii. instructions to staff that affect the public; or iii. final agency policy or determinations”.
Section 440 of the New York City Charter authorizes the establishment of the CCRB. Subdivision (c) of that section provides, in pertinent part: "(c) Review of civilian complaints. The commissioner shall have the power to and may establish within the police department, a review board, to consist of one or more persons, who shall serve at his pleasure, which board may have the power to receive, to investigate, to hear and to recommend action upon civilian complaints against members of the police department, or any one or more of such powers” (emphasis supplied).
*736 PROCEEDINGS BEFORE THE CCRB
There is some recent authority for the proposition that records of proceedings before the CCRB are available by virtrue of the provisions of the FOIL (see Walker v City of New York, 90 Misc 2d 565; People v Pack, NYU, April 27, 1978, p 11, col 4). Were those provisions to apply, the defendants would be entitled to the full records of CCRB proceedings without restriction, as would any other person. However, as noted, section 87 of the Public Officers Law permits a police department to publish rules denying access to intra-agency records which are not final agency policy or determinations. Further, as noted, under the provisions of section 440 of the New York City Charter, the function of the CCRB is to "hear and to recommend action upon civilian complaints.” The CCRB does not make final determinations in the matters which come before it. Rather, it takes the initial action in the processing of complaints. Final determinations are made by the Police Commissioner and not by the CCRB. It is therefore clear that the New York City Police Department has the power to exempt records of proceedings before the CCRB from the operation of the FOIL since the CCRB records are not final intra-agency determinations but merely preliminary intra-agency recommendations.
It is likely that those courts which have held that records of the CCRB are obtainable under the FOIL were unaware of Interim Order No. 52, promulgated by direction of the Police Commissioner of New York City on June 17, 1975 with regard to the information to be exempted from disclosure under the FOIL, particularly as the police department did not come forward with that material in this case until I made a specific request for any such orders upon the oral argument of the instant motion. Interim Order No. 52, which apparently was promulgated in accordance with the FOIL, exempts therefrom civilian complaints and disciplinary records. I therefore find that records of CCRB proceedings are not discoverable by virtue of the provisions of the FOIL (cf. People v Zanders, 95 Misc 2d 82).[1] This then brings us to the question of what records, if any, are discoverable pursuant to section 50-a of the Civil Rights Law.
*737 USE MADE BY POLICE DEPARTMENT OF CCRB RECORDS
In holding that records of the CCRB are not obtainable under the FOIL by virtue of Interim Order No. 52, the question whether such records are available pursuant to section 50-a of the Civil Rights Law has not been answered.[2] As noted, section 50-a applies to "personnel records, used to evaluate performance” of police officers "toward continued employment or promotion”. It therefore became necessary to determine what use, if any, the police department made of CCRB records with regard to continued employment or promotion. Accordingly, I directed the police department to produce a witness to testify to the use made by it of CCRB records.
Ms. Anna Braudes, an Associate Staff Analyst of the Employee Management Division of the New York City Police Department, testified that the CCRB makes recommendations as to probationary officers with regard to whether their probationary periods should be extended or whether they should be retained. As to permanent officers, the only records received from the CCRB are synopses of negative findings made against police officers. If a complaint made to the CCRB does not result in a negative finding, no record thereof is considered with respect to promotion or continued employment. Further, the records reviewed for continued employment or promotion include, in addition to the CCRB synopses, performance evaluations, disciplinary records and information from the central personnel index (which index contains allegations made against police officers).
Insofar as the information sought by defendants is concerned, I find that the synopses of negative findings by the CCRB, as well as the results of departmental investigations made of police officers, are considered by the department in evaluating "performance toward continued employment or promotion” and therefore fall within the ambit of section 50-a of the Civil Rights Law.[3] This, then brings us to the final question, i.e., whether such records, as well as the rest of the *738 personnel records sought, should be produced for in camera inspection pursuant to section 50-a.
STANDARDS FOR PRODUCTION OF INFORMATION PURSUANT TO SECTION 50-A
Prior to the enactment of section 50-a of the Civil Rights Law, the cases were in conflict as to whether and under what circumstances defendants could subpoena personnel records of police officers. In People v Sumpter (75 Misc 2d 55), the court noted (1) the trend toward mutual disclosure, (2) that the prosecution usually has available to it a substantial amount of information which could be used to impeach a defendant’s credibility and (3) that cases often turn upon the credibility of police officers. The duty of furnishing exculpatory evidence to the defense was held to extend to material going to the question of the credibility of prosecution witnesses. However, the court also noted (supra, p 60) the immense problems which unlimited disclosure could bring: "In our day, when record keeping respecting our lives and behavior, whatever our calling, is widespread and kept in a multitude of places for a variety of purposes, it is appropriate to question whether compulsory court process should be used to obtain such records in order to ascertain whether any witness, be he police officer or ordinary citizen, may be guilty of 'bad acts’ which might be used to impeach his credibility. Does the ordinary citizen who becomes a witness make himself vulnerable to a cross-examiner so that compulsory process can be used to obtain such data respecting his life, because by happenstance he witnesses an accident or a crime or because as part of his duty or for his own purposes he participated in a commercial or other transaction? It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility. The fear of such disclosures may well preclude people from making themselves available as witnesses and dry up valuable sources of evidence. If it is held that the Police Department is required to produce such records as to police officers, why not all governmental agencies and any employer, credit card company, bank, business or corporation with respect to any witness? The private life of every witness called for whatever purpose would in effect become an open book.”
*739 The court concluded (supra, p 61) that personnel records of police officers, when subpoenaed, should be turned over to the Trial Judge for in camera inspection and, in the exercise of his discretion, to "determine their relevancy under the circumstances of the trial”.
Other courts confronted with the same issue tended not to follow the People v Sumpter (75 Misc 2d 55, supra) holding. For example, in People v Fraiser (75 Misc 2d 756), the court held that documents are not subject to inspection because they may be useful in supplying a clue as to the gathering of evidence, but that the documents must be evidence themselves. Mere conjecture or surmise that useful evidence may exist was held not to provide a legal basis for the discovery of personnel records (see, also, People v Coleman, 75 Misc 2d 1090; People v Norman, 76 Misc 2d 644).
The facts in People v Torres (77 Misc 2d 13) were similar to those at bar in that it was alleged that the police officer had been the aggressor and that the defense was to be justification. The court there found that defendants were engaged in a fishing expedition and noted that even if the police officer had been guilty of prior vicious, immoral or illegal acts, proof of such acts could be used on cross-examination only as to credibility and would not bear on the defendant’s guilt or innocence. The court thereby rejected the Sumpter court’s reliance on the importance of proof as to credibility.
However, in People v Vasquez (49 AD2d 590), the Appellate Division noted that, upon a clear showing of materiality, trial courts should allow discovery of police personnel records after an in camera inspection of such materials.
The Legislature responded to the unclear pattern of the cases by the enactment of section 50-a of the Civil Rights Law. Two standards are set forth in the statute. The first provides that in order for the court to direct an in camera review (which can only be done, as here, after giving interested parties the opportunity to be heard), there must be "a clear showing of facts sufficient to warrant the judge to request records for review” (Civil Rights Law, § 50-a, subd 2). The second standard, governing disclosure after such a review, is one of relevancy and materiality (§ 50-a, subd 3).
Unfortunately, the very general standards of section 50-a have not resolved the problem. Some courts have interpreted the statute broadly and require little by way of a showing to meet the first standard and have shown a liberal view in *740 directing an in camera inspection (see, e.g., Guzman v City of New York, 91 Misc 2d 270; People v Zanders, 95 Misc 2d 82, supra), while others hold that mere speculation and surmise that relevant material may be present in the personnel file will not justify the granting of an in camera inspection (see, e.g., People v Lugo, 93 Misc 2d 195, 200).
If section 50-a of the Civil Rights Law is to be of utility, the first standard contained therein must be interpreted liberally. In the usual case there will be no way for a defendant to know what the personnel file will contain. I believe that the first statutory standard has been met here by the allegations that (1) the case will hinge on the officers’ testimony, (2) the officers initiated the physical contact and (3) independent witnesses will corroborate such fact. To require a showing under the first standard that the personnel records actually contain relevant matter would be to render the statute useless and to substitute the second statutory standard for the first.
Certainly, after an in camera review, no uncorroborated complaints or embarrassing but immaterial matter will be directed to be turned over to defense counsel. Rather, only such items which may be present as are in fact relevant and material will be divulged to defense counsel.
CONCLUSION
Accordingly, defendant’s motion is granted to the extent that a subpoena duces tecum will issue for an in camera inspection of so much of the personnel records of the three police officers involved, including synopses of CCRB findings, as relates to prior misconduct on the part of the officers.

. In view of this determination it is unnecessary to reach the question whether a subpoena duces tecum is the proper method to utilize in seeking to obtain material pursuant to the FOIL.

. It should be noted in this regard that the FOIL permits a public agency to deny access to records which are specifically exempted from disclosure by State statute (Public Officers Law, § 87, subd 2, par [a]). Therefore, if section 50-a of the Civil Rights Law were held to apply to all proceedings before the CCRB, the FOIL, by its very terms, would be inapplicable.

. Contrary to defendants’ claims, aside from the full records of proceedings before the CCRB, none of the material which they seek falls within the ambit of section 50-a of the Civil Rights Law.