OPINION of the court
William D. Friedmann, J.
The District Attorney moves pursuant to CPL 610.20 and CPLR 2307 to quash a subpoena duces tecum issued at the request of the defendant, by this court in “So Ordered” form, on November 26,1980 (Gorfinkel, J.). The subpoena was directed to the New York City Department of Social Services and was indorsed “To Be Produced In Camera”. It *933 demanded the production of the personnel file of complainant, Esther Roundtree, a Social Service Income Maintenance Specialist, employed by the said Department of Social Services.
The subject subpoena was served upon the legal division of the Department of Social Services, which produced and delivered the demanded material, without objection, to the Jury Assignment Part (JP I) of the court. The District Attorney, at this point, objected to the subpoena process, with its demanded production thereunder, and moved for an order quashing the subpoena on the grounds of immateriality, irrelevancy and privilege.
FACTS
The defendant, Stephanie Grosunor, is accused of striking the complainant, Esther Roundtree, with a chair, becoming loud and boisterous and using obscene language, thereby causing physical injury to the complainant, and creating a disturbance whereby all work ceased at a Department of Social Services Center on or about November 30, 1979. As a result of the incident, the defendant was charged by prosecutor’s information with assault in the third degree (Penal Law, § 120.00), criminal possession of a weapon (Penal Law, § 265.01), obstructing governmental administration (Penal Law, § 195.05) and disorderly conduct (Penal Law, § 240.20).
MOTIONS UNDER CONSIDERATION
Movant, District Attorney, seeks to test the validity of the subpoena by motion to quash or vacate it. The grounds urged being: (1) The records and documents sought are not legitimately related to the guilt or innocence of the defendant, that is, whether the defendant struck Esther Roundtree or engaged in the other activity complained of. (2) The subpoena is an unwarranted intrusion into the privacy of the complaining witness and in opposition to the public interest. (3) The defendant has not, up to this point, made a good faith showing or produced a factual predicate to link the personnel records of the complainant with the events of November 30, 1979.
Defendant resists quashing of the motion and urges the court to conduct an in camera inspection of the demanded *934 material. Essentially, she argues: (1) The personnel file of Esther Roundtree, maintained and made in the normal course of business by an agency (Department of Social Services) independent of the District Attorney’s office, is material and relevant and therefore subpoenable and discoverable. (2) The People have no standing to move to quash a subpoena directed to an independent agency not serving as their agent. (3) The demanded material is not subject to privilege or statutory exclusion and therefore is material and relevant. (4) The defendant stands ready to make an offer of proof at the proposed in camera inspection (so as not to prematurely reveal defense strategy) which will make it reasonably likely that the demanded material is linked with the events of November 30, 1979.
In addition to opposing the People’s motion to quash, the defendant cross-moves in the alternative for discovery and inspection of the same material, namely, the complainant’s personnel file, pursuant to CPL 240.10 and 340.30.
STANDING TO QUESTION SUBPOENA
The standing of the District Attorney to move on behalf of the New York City Department of Social Services will be the subject of preliminary inquiry. The court finds that the District Attorney, although a party to this criminal proceeding, does not have the requisite standing or authorization to make the within motion to quash. Such representation would appear to be in violation of local law (New York City Charter, § 394) and would constitute a conflict of interest between the agencies involved. Generally, the Office of the District Attorney is charged with the responsibility of initiating and conducting all prosecutions for crimes and offenses cognizable by courts of the county in which he serves. (People v Di Falco, 44 NY2d 482.) In addition, the District Attorney is elected by and for the County of the Bronx and discharges his duties within and for that county.
The Department of Social Services, the nonparty recipient of defendant’s subpoena, is an agency of the City of New York and, as such, has a statutory attorney and a legal division separate and apart from the District Attorney’s office. (New York City Charter, § 391 et seq.) For this *935 reason, the proper party to challenge the validity of the subpoena is the Department of Social Services and not the District Attorney’s office. As the court pointed out in Raynor v Kirk (30 Misc 2d 1041) which held that the District Attorney had no authority to represent the Nassau County Commissioner of Police, a member of the county police department and Nassau County itself, we are dealing with public officers and municipal agencies whose powers and duties are spelled out specifically by statute. In the case at bar, the relevant statutes require a holding similar to the one reached in Raynor (supra).
Although the District Attorney has broad discretion to prosecute for all crimes and offenses cognizable by the courts of the county for which elected (People v Di Falco, supra; County Law, §§ 700, 927), there is long-established precedent that the authority to prosecute is not exclusively vested in the District Attorney in certain misdemeanors and offenses, particularly those involving local laws. (People v Montgomery, 7 Misc 2d 294, and authorities cited therein.) In the case before this court, local law makes it abundantly clear that the interests of the Department of Social Services and its employee, Esther Roundtree, should have been represented by the Corporation Counsel of the City of New York or its designee, the legal division of the Department of Social Services.
Subdivision a of section 394 of the New York City . Charter sets forth the “powers and duties” of the Law Department of the City of New York. It provides that “the corporation counsel shall be attorney and counsel for the city and every agency thereof and shall have charge and conduct of all the law business of the city and its agencies and in which the city is interested.” (See Matter of Abrams v Ronan, 36 NY2d 714; Matter of Katz v Board of Higher Educ., 260 App Div 9.)
Examination of various criminal proceedings in which the quashing of a judicial subpoena duces tecum has been considered indicates that the motion to quash is made by the adversely affected and interested person and not by strangers to the litigation or by the District Attorney. (People v Dodge, 73 Misc 2d 80; People v Sumpter, 75 Misc 2d 55; People v Morales, 97 Misc 2d 733.)
*936 III People v Dodge (supra), the State Attorney-General moved to quash a subpoena issued to the Superintendent of Correction of the Ossining Reception Center. Although the court did not have to address the issue of standing, the case underscores the proposition that an interested and aggrieved nonparty may move to quash a subpoena, in that case, the Attorney-General in behalf of a State correctional facility. In similar fashion, it was the Police Department of the City of New York, through its legal division, that moved to quash judicial subpoenas directed against the department in both the Sumpter (supra) and Morales (supra) cases cited above.
This court in making its preliminary determination with regard to standing is cognizant of the authority indicating that any party affected by process of a court may apply to that court for modification or vacatur or to have the process quashed. (Matter of Roden, 200 Misc 513.) However, after careful review of such authority permitting intervention on a motion to quash, it would seem that only the Department of Social Services, by its attorneys, or the complainant, Esther Roundtree, by her own attorney, would be affected by the subject process in order to gain standing to move to quash or vacate it.
The standing of those adversely affected and thus having standing to move to quash or vacate a subpoena issued to another is succinctly summarized in Beach v Oil Transfer Corp. (23 Misc 2d 47, 48) wherein a client sought to invoke the privilege of the attorney-client relationship: “The right of the defendant and the witnesses subpoenaed to challenge the compulsion of the process served prior to the production of the records demanded cannot seriously be questioned. *** In situations where witnesses served with subpoenas are not parties, nevertheless, upon a claim of privilege, the defendant being the party principally concerned by the adverse effect of the subpoenas served upon the witnesses and being the ‘party whose rights are invaded by such process may apply to the court whose duty it is to enforce it, or to set it aside if it is invalid’ ”.
It does not appear to this court that the District Attorney is a party directly or derivatively affected by the subject *937 subpoena so as to acquire the necessary standing to challenge the process.
The court is further aware in making this preliminary determination on standing of what appears to be a contrary position reached by Professor David D. Siegel in his Practice Commentary to CPLR 2304 (McKinney’s Cons Laws of NY, Book 7B, CPLR, C2304:l) wherein he states: “The motion to quash may be made in behalf of the witness (who if not a party will usually not have his own attorney to represent him) by one of the parties. If, for example, a subpoena is served on W for the purpose of taking his deposition, CPLR 3106(b), but the conditions for such a deposition are not met, CPLR 3101(a) (3 and 4), the opposing party may move for a protective order (CPLR 3103) precluding the disclosure and incidentally quashing the subpoena served on the nonparty witness.”
SUBPOENA IS PROPER PROCESS'
Yet, a determination with respect to standing is but a threshold consideration. The court, upon granting or denying a motion to quash or vacate a judicial subpoena duces tecum, retains jurisdiction to impose conditions regarding the implementation of the subpoenas mandate (CPLR 2304). In considering the various conflicting contentions of the parties, the court agrees that a subpoena duces tecum is the proper court process for the production of the personnel records sought in this case. However, the court does agree that a subpoena duces tecum is not the proper process to be employed in lieu of a motion seeking discovery and inspection (CPL 240.20, subd 2). Simply stated, a subpoena duces tecum is a court process compelling the production of certain specific documents and other items, material and relevant to the facts in issue in a pending judicial proceeding, which documents and items are in the custody and control of the person or body served with process (in the case at bar, the Department of Social Services) (see Matter of Roman, 97 Misc 2d 782, 784; People v Coleman, 75 Misc 2d 1090; People v Simone, 92 Misc 2d 306).
CPL 610.20 (subd 3) permits an application to the court for the issuance of a subpoena duces tecum directed to any *938 department, bureau or agency of the State or subdivision thereof. The issuance and execution of these subpoenas are governed by the provisions of CPLR 2307. These subpoenas are judicial in nature (CPLR 2302, subd [b]) and returnable before the court (CPLR 2305, subd [a]). That court can best protect the confidentiality of persons and agencies such as the Department of Social Services and its employees, here the complaining witness, Esther Roundtree, both nonparties to the instant proceeding, by defining and limiting the scope of the subpoena upon issuance or challenge. After an in camera inspection of the demanded material and redaction therefrom of immaterial and irrelevant information, the court will have adjusted and protected the interests of all the respective persons and parties (Matter of Roman, supra).
It has been contended that defendant, in seeking to obtain the personnel file of the complaining witness, has requested records for which there are privileges recognized by statute and public policy. The production of personnel records of a nonpolice public employee is not precluded by any known privilege as a matter of law (cf. Civil Rights Law, § 50-a). Certain other statutes do create privileges from the production of certain information by subpoena (see CPLR 4503, attorney-client privilege; 4504, physician-patient privilege; Social Services Law, §§ 136, 372, concerning protection of agency records in the area of child placement and public assistance applications).
The court notes, however, that even when faced with a challenge to disclosure on the ground of privilege, such privilege is not absolute in nature and must give way to a showing of necessity (see Matter of Roman, 97 Misc 2d 782, supra).
Contrary to the contention of the District Attorney, this court must conclude upon examination of section 50-a of the Civil Rights Law and the authorities thereunder that the modified privilege offered by section 50-a is not applicable to the instant proceeding involving a nonpolice public employee. That section of the Civil Rights Law clearly governs the production of personnel records of police officers. It was enacted to resolve the conflict in the case law as to whether and under what circumstances defendant could *939 subpoena the personnel file of police officers (People v Morales, 97 Misc 2d 733). This court cannot extend rights beyond the clear intendment of the Legislature.
However, there seems little doubt that the public interest requires that a privilege qualified in nature should apply for the protection of the personnel records of both public and nonpublic employees (see People v Sumpter, 75 Misc 2d 55, supra; People v Fraiser, 75 Misc 2d 756). The excellent and often quoted analysis of Justice Arnold Fein in People v Sumpter (supra, p 60) as to the dangers in permitting the disclosure of personnel records of witnesses and litigants is worth repetition: “In our day, when record keeping respecting our lives and behavior, whatever our calling, is widespread and kept in a multitude of places for a variety of purposes, it is appropriate to question whether compulsory court process should be used to obtain such records in order to ascertain whether any witness, be he police officer or ordinary citizen, may be guilty of ‘bad acts’ which might be used to impeach his credibility. Does the ordinary citizen who becomes a witness make himself vulnerable to a cross-examiner so that compulsory process can be used to obtain such data respecting his life, because by happenstance he witnesses an accident or a crime or because as part of his duty or for his own purposes he participated in a commercial or other transaction? It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility. The fear of such disclosures may well preclude people from making themselves available as witnesses and dry up valuable sources of evidence. If it is held that the Police Department is required to produce such records as to police officers, why not all governmental agencies and any employer, credit card company, bank, business or corporation with respect to any witness? The private life of every witness called for whatever purpose would in effect become an open book.”
The court concludes that there is a public interest in ensuring that persons reporting crimes, waste, mismanagement and wrongdoing be encouraged and protected in *940 the performance of their civil duty. As was stated in People v Hasson (86 Misc 2d 781, 784-785) respecting the rights of witnesses: “the use of shotgun style judicial subpoenas to discover privileged * * * information about the entire life of a potential witness and his family, whether from public agencies or private repositories, will find little favor with this court. Witnesses have rights in both criminal and civil proceedings. If every witness faced the prospect of having his entire privileged personal life examined by counsel and then paraded before the public, we would find ourselves looking long, hard and perhaps fruitlessly, for those who would shed light on the truth of controversies before the court.”
The Court of Appeals has recently discussed various relevant considerations regarding the issuance and implementation of subpoenas duces tecum requiring the production of police personnel files (People v Gissendanner, 48 NY2d 543). The same analysis is pertinent to the production of personnel files of nonpolice public employees and other private citizens. Recognizing the tension existing between the rights of an accused to confront, and cross-examine adverse witnesses and the interests of every witness to be free from having his private life made an “open book”, the court stated (p 548): “Among other values *** is * * * the maintenance of police morale and the encouragement of both citizens and officers to co-operate fully without fear of reprisal or disclosure * * * into misconduct. As to those accused of crime, it should be too obvious to need reiteration that restrictions on the right to cross-examine key prosecution witnesses can deprive a defendant of an important means of combating inculpatory testimony or at least demonstrating the existence of a reasonable doubt as to guilt.”
Following an exhaustive review of Federal and New York State authorities on the subject of disclosure of personnel records by subpoena duces tecum, the Gissendanner court outlined the following test of entitlement to access to subpoenaed information (p 550): “The thread that runs through these cases does not indicate that a defendant must make a preliminary showing that the record actually contains information that carries a potential for establish *941 ing the unreliability of either the criminal charge or of a witness upon whose testimony it depends. The decisions erect no inviolable shield to prevent the discovery of what might turn out to be relevant and exculpatory material. What they do call for is the putting forth in good faith of some factual predicate which would make it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desparate grasping at a straw.”
CONCLUSIONS
Applying the Gissendanner test to the case at bar, I order that the subject subpoena be effected as follows: (a) The Department of Social Services is directed to redact and produce only those parts of the personnel file of the complainant, Esther Roundtree, which pertain to matters related to the continued employment or promotion of Esther Roundtree (People v Hasson, 86 Misc 2d 781, supra; People v Zanders, 95 Misc 2d 82); (b) The said records are to be produced to the jury clerk’s office, sealed, for an in camera examination by the Trial Judge (People v Sumpter, 75 Misc 2d 55, supra); (c) Following such examination, an inquiry into a linkage with the events of November 30, 1979 is to take place. Defendant will be required to make a good faith showing in accordance with the Gissendanner (48 NY2d 543, supra) test; (d) Following the in camera examination and the showing of some factual predicate, the Trial Judge will determine the relevancy and materiality of the records in question, that is, whether any information contained in the personnel file should be made available to defendant’s counsel and the prosecution, in aid of cross-examination to impeach credibility or for other purposes (People v Sumpter, supra).
DISCOVERY UNWARRANTED
Defendant’s alternative cross motion for discovery and inspection pursuant to CPL 340.30 and 240.10 is denied. New CPL 240.20 (subd 2) provides that “the prosecutor shall not be required to obtain by subpoena duces tecum demanded material which the defendant may thereby obtain.” Inasmuch as the defendant in this case may obtain the demanded material following the Trial Judge’s in cam *942 era inspection pursuant to defendant’s subpoena and the provisions of this order, discovery of this same material is unwarranted, unnecessary and is denied.